JOHN BAKER ET AL., Respondents, *v.* CITY OF ST. LOUIS, Appellant.

June 24, 1879.

1. The representatives of the covenantee may proceed in equity to compel specific performance, where the covenant is one which runs with the land.

2. A covenant in a conveyance of realty to a city for a street and market-house, that the lot shall revert and the grantee reconvey when the ground ceases to be used for a market, runs with the land, the grantors retain the fee subject to the easement, and abandonment gives a right of reëntry.

3. The covenant to reconvey relieves the grantors from the rule which requires that the reversioner shall enter before he can maintain a claim of forfeiture for a breach of a condition subsequent.

4. Where the grantors have made partition of the ground bounded on one side by the dedicated street, the deeds carry the fee, subject to the easement, to the centre of the street, and each grantee takes in severalty a reversionary right in so much of the strip in controversy as pertains to the lot acquired by him in partition, which he may assert against the city.

5. Judgment for possession may follow the final ascertainment of a party's title as against his adversary in possession in a proceeding in equity.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

LEVERETT BELL, for appellant.

G. POLLARD, for respondents.

LEWIS, P. J., delivered the opinion of the court.

On February 25, 1832, Peter Lindell and Jesse G. Lindell conveyed to the mayor, aldermen, and citizens of the city of St. Louis a strip of ground of the uniform width of thirty feet and nine inches, lying across the west front of block 67, extending from Christy Avenue to Morgan Street, and bounded on the west by Third Street or Broadway. The deed contained the conditions following:—

"The foregoing release is made on the condition and for the purpose of so widening Third Street as to give sufficient space for the new market-house in the north ward of said city, in pursuance of an ordinance entitled 'An ordinance

widening part of Third Street, and authorizing the erection of a new market-house in the north ward,' approved the 28th day of January, 1831 ; the said granted and released premises to be occupied and enjoyed by the said parties of the second part and their successors, as a street and market-place as aforesaid, so long as the said market-house and the purposes for which it was erected shall continue ; and so soon as the said granted and released premises cease to be used and occupied for the purposes aforesaid, the said lot or parcel of ground released as aforesaid shall revert to the said parties of the first part, their heirs or assigns, and the said parties of the second part shall, upon failure to use said market-house for the purposes aforesaid, reconvey to said parties of the first part all the right, title, and interest which by this conveyance is or shall be vested in them, the said parties of the second part.''

On June 28, 1856, Peter Lindell and Jesse G. Lindell executed deeds of partition interchangeably, wherein it was recited that they were joint owners of all of block 67, except a lot in the north-west corner thereof, having a front of 37½ feet on Broadway, and a depth eastwardly of 110 feet on Morgan Street. By these deeds Jesse G. Lindell became owner in severalty of a lot lying next south of the lot above described, having a front of 102 feet 10 inches, and running east to an alley, and being bounded on the west by Broadway. Peter Lindell, by the same deeds, became owner in severalty of the lot lying next south of the one last above described, having a west front of 102 feet 10 inches, and running east to an alley, and being bounded on the west by Broadway, and on the south by Christy Avenue or Green Street.

Jesse G. Lindell died in 1859, leaving a last will and testament, whereby a life-estate in all his personalty was bequeathed to the plaintiff Jemima Lindell, together with an estate in fee in one-half of the real estate. The other half, after the death of the life-tenant, was devised in undivided

shares to eight persons, including the plaintiffs Levin H. Baker and Robert Baker. Peter Lindell died intestate in 1861, leaving ten heirs-at-law, including the plaintiffs John Baker, Robert Baker, and Levin H. Baker. In 1842 a market-house was erected in the centre of Third Street, opposite block 67, and there it remained until 1868, when it was wholly removed under a city ordinance adopted in 1865. Since that removal no market-house has existed there, and the ground has been paved by the city and used, in its whole width, for a street. On November 10, 1873, seven of the heirs of Peter Lindell, deceased, conveyed to the three other heirs, being the plaintiffs John Baker, Robert Baker, and Levin H. Baker, " all that part of city block 67 which the said Peter Lindell owned or was entitled to at the time of his death," describing the same as being bounded on the west by Third Street. On October 27, 1876, the plaintiffs John Baker, Robert Baker, and Jemima Lindell made a demand, in writing, upon the city of St. Louis for a reconveyance of the property conveyed by their ancestors in 1832, on account of the failure by the city to perform the conditions of that conveyance. This suit was instituted by John Baker, Robert Baker, Jemima Lindell, and William F. Causey, assignee in bankruptcy of Levin H. Baker, to enforce that demand. The petition contains two counts : the first being in the nature of a bill in equity, with a prayer that the defendant be compelled to reconvey the property, and to deliver possession thereof ; the second count is, in effect, an ordinary petition in ejectment. The plaintiffs, under an order of court, elected to proceed upon the first count, and abandoned the second. Upon a hearing of the cause, the court decreed that within thirty days the defendant convey to the plaintiffs the property in dispute, and that, failing such conveyance, the decree should operate to like effect ; and further, that on the expiration of the thirty days the defendant should deliver the possession of the property to the plaintiffs. Defendant appealed.

It is objected by defendant, for error, that there is a defect of parties plaintiff; that by the deed of November 10, 1873, no interest was conveyed to the plaintiffs in the property here in controversy, and the seven grantors in that conveyance are still owners of whatever rights might descend to them from Peter Lindell, deceased. The objection was not raised in the Circuit Court by demurrer or answer, and therefore comes too late. Wag. Stats. 1015, sect. 10. It will be apparent from what follows, however, that it could not properly have been sustained, even if made in due time and form.

The principal questions presented in this controversy are easy of solution when we refer them to a well-known rule of real property. A conveyance of a city lot bounded on a street always carries the fee, subject to the public easement, to the centre of the street, unless there be an express reservation to the contrary. In the leading points made for the defendant this rule appears to be utterly ignored. The plaintiffs seem to recognize its application to the conveyance of November 10, 1873, but practically reject it everywhere else.

In order to determine the legal effect of an instrument, we must look at all its parts. The conveyance by Peter and Jesse Lindell, taken with all its reservations and conditions, was in effect nothing more than a dedication, upon condition subsequent. The city took only an easement for the public use as a street. The reservation, or reversion upon breach of condition, was equivalent to a retention of the fee, subject to the public easement, as appurtenant to the lot from which the strip was severed. An abandonment or closing of the street by municipal authority would create in the grantors a right of reëntry, with like effect as if they had executed a mere formal dedication to the public use. When, in 1856, the two Lindells made partition, the conveyance of each lot with the street for its western boundary carried the fee, subject to the public easement, to the

centre of the street. Each grantee took, in severalty, a reversionary right in so much of the strip here in controversy as pertained to the lot conveyed to him in the partition. If, by breach of condition, the public easement has ceased as to a part of the street not extending to the centre, then, as to such part, the resulting claim of the holder in fee may be asserted against the city.

The conveyance, in November, 1873, by seven of the heirs of Peter Lindell to three of the present plaintiffs, described the property conveyed as being bounded on the west by Third Street. From what has already been said, it is apparent that this vested in the grantees all the interest of the grantors extending to the centre of the street, and including so much of the strip here in controversy. There is, therefore, no defect of parties in the omission of those grantors from the present proceeding.

By the common law it is required, in every case of condition subsequent, that the grantor or reversioner, upon condition broken, shall make entry on the premises before he can maintain his claim of forfeiture. He may waive the claim indefinitely, and, until entry actually made, it will be considered that he does so. In the present case, however, there is an element of covenant which relieves the plaintiffs from an application of the rule. The deed made by the two Lindells in February, 1832, was duly executed and delivered by the city authorities also. It contains an express undertaking on the part of the city to reconvey the property upon a failure to use the market-house as stipulated. The covenantees, or their proper representatives, may, upon the happening of the contingency specified, proceed in equity to compel specific performance. But for this covenant, it might be difficult to find in the record a case for the plaintiffs' recovery.

It does not anywhere appear in the conveyance of February, 1832, that its condition may be satisfied by the maintenance of either a market-house or a street alone.

The granted premises are to be used for a " street and market-place as aforesaid, so long as the said market-house and the purposes for which it was erected shall continue," etc. The reconveyance is to be " upon a failure to use said market-house for the purposes aforesaid." Language could not be devised to express more clearly that a failure of the market-house would be a failure of the condition, whether the use of the street were continued or not.

There was no error in the judgment for delivery of possession. The earlier decisions of our Supreme Court were emphatic against what was called the practice of maintaining ejectment under the guise of a bill in chancery. Many reasons, apparently satisfactory, might be urged against a summary judgment for possession in a proceeding whose inquiries are limited to the paper title. But in *Henderson* v. *Dickey*, 50 Mo. 161, the law is settled for Missouri, that a judgment for possession may properly follow the final ascertainment of a party's title, as against his adversary in possession, in an equity proceeding for correction of title-papers or for specific performance. If, as may sometimes occur, there be any reason why immediate possession should not follow the title, that fact must 'be shown by the party against whom the decree for possession is asked.

The judgment heretofore rendered in this court will be set aside, and the judgment of the Circuit Court affirmed. All the judges concur.