CASSIUS C. BALL *vs.* MYRTIS A. MILLIKEN.

JULY 7, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Conditions Subsequent. Equitable Interests. Wills.*

X. conveyed premises to Y., with condition "it is expressly understood that the premises is for the specific purpose of a blacksmith and wheelwright shop; the said (grantee) his heirs and assigns shall not convert the shop or building that may be erected to any other purpose than here specified (reciting various purposes) and no other purpose whatever, and the said grantee for himself, and his heirs and assigns promises to reconvey said estate to grantor, his heirs executors and assigns in case of any violation of the foregoing provisions."

The lot came by mesne conveyances to respondent, who knew, upon acquiring title, of the conditions.

X. died, devising to complainant, his son, all of said tract of land excepting that part which he had conveyed to Y., together with all his interest in the lot conveyed to Y. On bill praying for a conveyance to complainant from respondent, or for an injunction, for breach of conditions:—

*Held*, that, whatever may have been the legal interest remaining in X., he obtained an equitable interest to demand a conveyance for breach of the restrictions, which he had the right to devise.

*Held*, further, that a contingent equitable interest in land is devisable under Gen. Laws 1896, cap. 201, § 23 (1909, cap. 252, § 23), and might also have passed by devise prior to the enactment of that chapter.

(2) *Specific Performance. Forfeitures.*

The right to specific performance is not absolute, but rests in the discretion of the court.

Equity will not decree a forfeiture.

*Held*, that, under the circumstances, to decree specific performance would be

unreasonably to oppress the respondent, and would violate equitable principles.

(3) *Injunctions. Restrictions.*

*Held,* further, that complainant was entitled to an injunction, to restrain violations of the restrictions.

*Held,* further, that it was not necessary that the restriction should appear by express language to be for the benefit of the land, the circumstances of the case establishing that fact, as well as the presumption of law being that it is for the benefit of the remaining land.

(4) *Laches. Limitations. Waiver.*

*Held,* further, that complainant's right was not barred by laches or the statute of limitations, and that he had not waived the breach of the condition.

A waiver of a condition as to the use of a building in one respect will not prevent an insistence upon the restriction to prevent a violation of the condition by other uses of the building.

*Semble*: If it had been necessary to determine as to the legal nature of the restriction in the deed, the court would be warranted in finding that the provision was a condition; that there remained in X. the right of re-entry, which interest was devisable under Gen. Laws, 1896, cap. 201, § 23 (now Gen. Laws, 1909, cap. 252, § 23), and, by some authorities, at common law.

BILL IN EQUITY, seeking a conveyance, or for injunction.

SWEETLAND, J.    This is a bill in equity, brought by Cassius C. Ball against Myrtis A. Milliken, praying that the respondent be ordered to convey to the complainant, by quit-claim deed, all her right, title, and interest in a certain parcel of land in the town of New Shoreham; and also, as alternative relief, that the respondent be enjoined from letting, leasing, or subletting said premises, or any part thereof, for any purposes other than those specifically set forth in a certain deed from Nicholas Ball to John W. Hooper.

It appears from the allegations of the bill and the testimony that in 1861 one Nicholas Ball owned a tract of land in New Shoreham; that by deed dated June 12th, 1861, he conveyed a certain part thereof, about ninety feet square, to one John W. Hooper; that said deed contained the following restriction or condition: "And it is expressly understood that the premises herein conveyed is for the specific purpose of a blacksmith and wheelwright shop.    The said J. Hooper, his heirs and assigns

shall not convert the shop or building that may be erected to
any other purpose than here specified, to wit: Blacksmithing,
wheelwrighting, repairing tin, copper, saddles, harness, tackle,
and the using of a turning lathe, and repairing of fire arms, and
no other purpose whatever, and the said grantee for himself
and his heirs and assigns, promises to reconvey said estate to
said grantor, his heirs, executors, and assigns, in case of any
violation of the foregoing provisions in this deed"; that the
said lot conveyed to Hooper came by mesne conveyance to the
control and management of this respondent, who now holds
the legal title of record to said lot; that at the time the said
respondent acquired title to said lot she knew of the said con-
dition contained in the deed from Nicholas Ball to John W.
Hooper; that previous to his death the said Nicholas Ball con-
veyed to this complainant another portion of his said tract of
land upon which was a store in which the said Nicholas Ball
had carried on for many years the business of selling groceries
and general merchandise, which business was continued by this
complainant up to the time of filing this bill; that Nicholas
Ball died on July 31st, 1896; that his last will and testament,
dated May 18th, 1894, was duly admitted to probate by the
Probate Court of said New Shoreham; that in said will Nicholas
Ball devised to this complainant, his son, all of said tract of land
owned by said Nicholas Ball as aforesaid, excepting that part
which he had conveyed by said deeds to John W. Hooper and
to Cassius C. Ball, the complainant, and also devised to the
complainant all the right, title, and interest of said Nicholas
Ball in and to the said lot conveyed to John W. Hooper; the
respondent contends that this interest is not devised by said
will to the complainant, but we are of the opinion that it appears
by the provision of said will that the testator intended to devise
to the complainant all the interest in the so-called Hooper lot
which the testator had reserved by his said deed; that the re-
spondent, in violation of the condition contained in the deed to
Hooper, has let, leased, and sublet the premises described, in
said deed, for the purpose of making and repairing watches

and jewelry, for the sale of intoxicating liquors, for repairing boots and shoes, and for keeping swine and horses.

The respondent by her answer admits that since she has owned her said lot and building, she has not used the same for any or either of the specific purposes set forth in said deed from Nicholas Ball to Hooper; and has used and allowed to be used portions of said building for other purposes, and she sets up in defence and claims the same benefit of each of the following defences as if she had pleaded them in bar or for these reasons had demurred to said bill.

1st. That the complainant by his bill shows no right as devisee to maintain it;

2d. That the agreement—or whatever it may be called—in the Hooper deed, does not run with the land, and is not obligatory upon the defendant;

3d. That the complainant's action is barred by laches, and is estopped from claiming and has waived the breach;

4th. That under our statute of adverse possession for twenty years, and, since the General Laws of 1896, for ten years, the defendant's title has become absolute, and the complainant's action is barred;

5th. That the complainant's action is barred by our statute of limitations.

The respondent contends that the right or interest which remained in Nicholas Ball under the deed to John W. Hooper was not such an estate or interest as could be devised by him either at common law or under cap. 201, § 23 of the Gen. Laws, 1896; and so, that the complainant is not entitled to the conveyance of the estate as prayed by his bill.

If it was necessary to determine, in the case before us, as to the legal nature of the restriction contained in the deed to Hooper, and what were the rights at law of Nicholas Ball under it, authority would not be lacking to warrant the court in finding that the provision contained in the deed was a condition, that there remained in Nicholas Ball a right of re-entry for breach of condition, and that, according to some authorities, the interest remaining in Nicholas Ball was one which he could

devise at common law. Whatever may be said as to these authorities, there can be no question that the interest retained by Nicholas Ball was devisable under cap. 201, § 23, Gen. Laws (1896), now cap. 252, § 23, Gen. Laws (1909).

· Conditions are not favored in law, as they tend to destroy estates; but conditions may be created if such an intention appears from an examination of the whole deed. There are certain words which are considered appropriate to create a condition, but when these apt words are used the provision is not always construed as a condition, and without these words conditions have been found to exist when such appears to be the intention of the parties. *Clapp* v. *Wilder*, 176 Mass. 332, at 341. "Whether the words amount to a condition or a limitation, or a covenant may be a matter of construction depending on the contract," Kent's Com. vol. 4, 132. If it clearly appears by the deed that it was the intention of the parties that upon a breach of the restriction the estate conveyed to the grantee should be defeated and should return to the grantor, such a restriction is a condition. And if it is found that a provision in a deed is a condition, then a breach of that condition works a forfeiture of the estate and there is a right of re-entry in the grantor without express provision for forfeiture and re-entry. It clearly appears by the deed to Hooper that it was the intention of the parties that, upon a breach of the provisions restricting the use of the premises conveyed, the property should return to the "grantor, his heirs, executors and assigns," and in addition to the right to re-enter the grantor obtained, for himself, his heirs, executors, and assigns, the right to demand a reconveyance in the case of any violation of the provision in the deed.

The provision for reconveyance, in case of breach of a restriction in a deed, is not a common one. The authorities throw but little light upon the effect of such a provision upon the estate conveyed. The provision for reconveyance establishes the intention of the parties that the land should return to the grantor upon a violation of the provision, and the restriction could well be construed to create a condition. If a condition,

there was in the grantor a right to claim a forfeiture for its breach and to re-enter. It does not appear that the provision for reconveyance was intended to diminish the rights of the grantor or was a substitute for a forfeiture and the right to re-enter, but was intended as a right in addition to his rights at law. The future contingent right of entry for condition broken would pass to this complainant by the will of Nicholas Ball under the provision of Gen. Laws, 1896, Chapter 201, § 23. This section, in force at the time of the death of the testator, is as follows: "Hereafter a contingent, an executory, and a future interest, and a possibility coupled with an interest, in any tenements or hereditaments of any tenure, also a right of entry, whether immediate or future. and whether vested or contingent, into or upon any tenements or hereditaments of any tenure, may be disposed of by legal conveyance or will; but no such disposition shall, by force only of this section, defeat or enlarge an estate-tail."

*Austin* v. *Cambridgeport Parish*, 21 Pick. 215, was a writ of entry *sur disseisin* to recover possession of demanded premises. The demandant claimed as devisee under the will of Benjamin Austin, one of the grantors of an estate upon condition, against a grantee of the first grantee. After deciding that the estate in the first grantee was an estate upon condition subsequent and that there had been a forfeiture, the court said: "It then becomes important to ascertain whether the interest of Benjamin Austin in the premises at the time of executing his will, was a devisable interest, and if so, whether the demandant acquired a title to the same under the will." And the court decided that the interest of the testator "was not a present right of entry, but a contingent possible estate. That such an interest is devisable in England, seems well established by the case of *Jones* v. *Roe*, 3 T. R. 88, and the cases there cited. Chancellor Kent states the rule to be, that all contingent possible estates are devisable. 4 Kent's Com. 498, in notes."

In *Brattle Square* v. *Moses Grant et als.*, 3 Gray, at p. 160, the court, in commenting with approval upon *Austin* v. *Cambridgeport, supra*, says: "That was a grant by deed of an

estate, defeasible on, a condition subsequent which was legal and valid. The possibility of reverter was in the grantor and his heirs or devisees; the residue of the estate was vested in his grantee, the parish. The two interests united made up the entire fee simple estate, and were vested in persons ascertainable and capable of conveying the entire estate. . . . The conditional estate in the parish, and the possibility of reverter in the devisees of the grantor, were vested estates, and interests capable of conveyance, and constituting together an entire title or estate in fee simple."

The doctrine laid down in *Austin* v. *Cambridgeport, supra,* has been followed in a number of Massachusetts cases. In *Dunlap* v. *Bullard,* 131 Mass. 163, the court held that, when an estate is conveyed to be held by the grantee upon a condition subsequent, there is left in the grantor a contingent reversionary interest. In *Clapp* v. *Wilder,* 176 Mass. 337, the court, in considering a deed conveying land upon a condition, held: that the right of reverter remaining in the grantor up to the time of his death went, upon his death, to his heir or devisees. *Austin* v. *Cambridgeport, supra,* found in the common law the power to devise the right of reverter. Later cases approve the doctrine of the earlier case, that the right remaining in the grantor of an estate upon condition constituted an interest in the land. After *Austin* v. *Cambridgeport,* a statute was enacted in Massachusetts which provided that lands to which the testator has the right of entry may be devised and shall pass to the devisee. The Massachusetts statute was as follows— Rev. Stats. Mass. (1836), Chap. 62: "Sec. 2. When any person shall devise lands, of which he may not then be seized, but to or for which he has any right of entry, or when, after the making of any devise, the devisor shall be disseized or ousted of the devised premises, they shall nevertheless pass to the devisee, in like manner as they would have descended to the heirs of the devisor, if he had died intestate: and the devisee shall have the like remedy for the recovery thereof, either by entry or by action, as the heirs might have had." This statute has remained in force in practically the same form to the present time,

and appears as section 24, Chapter 135, Revised Laws of Massachusetts, 1902. The Massachusetts statute gives to testators no greater power of disposition of contingent interests in land by devise than was given in this State by Gen. Laws, 1896; Chapter 201, § 23.

The case of *Upington* v. *Corrigan*, 151 N. Y. 143, cited by the respondent, takes a view of the right remaining in a grantor, who conveys land upon a condition subsequent, different from that adopted by the Massachusetts cases. The New York court held that there remained in the grantor no estate or interest in the land, and as, under the New York statute, only an " estate or interest in real property" could be devised, the right remaining in the grantor was not devisable, but there was no statute in New York, at the time of the decision in *Upington* v. *Corrigan*, with reference to the devise of contingent estates, of the nature of the Massachusetts and Rhode Island statutes.

Whether we are prepared to accept the doctrine laid down in *Austin* v. *Cambridgeport, supra,* or not, if at law the estate conveyed to Hooper was one upon condition subsequent, then the right of reverter remaining in Nicholas Ball was devisable under Gen. Laws, 1896, cap. 201, § 23. This complainant, however, is not seeking to enforce any legal right. Whatever may have been the legal interest remaining in Nicholas Ball in the estate conveyed to Hooper, he obtained a certain equitable interest which he had a right to devise, and which he did devise, to this complainant, and the complainant is now seeking to enforce the equitable right which he claims that equitable interest gives to him. When Hooper accepted the deed from Nicholas Ball he bound himself, his heirs and assigns, to reconvey the estate, described in the deed, to Nicholas Ball, his heirs, executors, and assigns, in case of a violation of the provision in the deed. This gave to Ball an equitable interest in the land.

It is well established that a right to demand a conveyance of land constitutes an equitable interest in that land. In *London &c. Railway Co.* v. *Gomm*, 20 L. R. Ch. Div. 562, it appeared that the plaintiff was seized of certain land which

was no longer required for the purpose of the railway, and the plaintiff conveyed the land to C. P., and the grantee covenanted with the company that he, his heirs and assigns, whenever the land might be required for the railway or works of the company, and whenever thereunto requested by the company, after a certain notice and on payment of a certain sum, would reconvey the land to the company. The land passed by conveyance to the defendant with notice of the covenant, and the company gave the defendant notice and requested him to reconvey the land. It was found that the land was at the time of the notice required for railway purposes. Jessel, Master of the Rolls, held that the covenant gave an interest in the land, and said: "But if it binds the land it creates an equitable interest in the land. The right to call for a conveyance of the land is an equitable interest or equitable estate. In the ordinary case of a contract for purchase there is no doubt about this, and an option for repurchase is not different in its nature. A person exercising the option has to do two things, he has to give notice of his intention to purchase, and to pay the purchase money; but, as far as the man who is liable to convey is concerned, his estate or interest is taken away from him without his consent, and the right to take it away being vested in another, the covenant giving the option must give that other an interest in the land."

The interest of Nicholas Ball in the land conveyed to Hooper does not differ in its essential quality from the interest of the railway in the land referred to in *London* v. *Gomm, supra.* The railway had the right to demand a reconveyance from its grantee or his assigns upon the happening of the contingency that the growth of the railway's business should make requisite the use of the land by the railway. Nicholas Ball had the right to demand a reconveyance from Hooper or his assigns upon the happening of the contingency that the land was used in violation of the provisions of the deed. In such case an equitable interest in the land was given to the grantor.

Where a person has entered into a contract to purchase land, and, before he receives a deed, dies, it is well established that, although the purchase money has not been paid, the testator's

equitable interest in the land will pass by a devise.  *Acherley* v. *Vernon*, 9 Mod. 69, and 10 Mod. 518.

An equitable interest in land, though it is but a contingent equitable interest, clearly might be devised under Gen. Laws, 1896, cap. 201, § 23, and the doctrine that it might have passed by devise, before the enactment of said Chapter 201, is well supported by the case, *Bailey* v. *Hoppin*, 12 R. I. 560. In that case the court held that a certain interest in land, then under consideration, was a contingent equitable interest, and that such an interest conveyed before his death to a testator is transmissible in equity to his devisee, notwithstanding the precarious nature of the subject of the deed.  The court said: "Under the English Statute (32 Henry VIII. cap. 1) a devise of equitable estates, including estates which have only been contracted for, and even where the contract by its terms is not performable until after the execution of the will, is upheld as good in equity.  *Greenhill* v. *Greenhill*, Finch. Prec. in Ch. 320; *Acherley* v. *Vernon*, 9 Mod. 68, 78; *M'Kinnon* v. *Thompson*, 3 Johns. Ch. 307.  Under these precedents the only difficulty here is, that the estate contracted for was, when the will was made and until after it went into effect, something which might never exist.  The contract, however, was, as we have seen, valid in equity; and therefore the contract itself, whatever subtle lawyers may think of the subject of it, was a valuable property, and as such we think it must be held to have passed to William A. Hoppin under the will."

The provision of the deed to John W. Hooper, giving to Nicholas Ball the right to demand a reconveyance of the land upon the violation of the restrictions contained in the deed, gave to said Ball an interest in the land.  This interest might be devised, and the right to demand a reconveyance is now in the complainant as devisee of Nicholas Ball, and is not in the heirs of Nicholas Ball.  The next question is whether the complainant shall be given the relief which he seeks and shall obtain a decree for specific performance ordering a conveyance of the land to him for a breach of the provisions of the deed.

(2)   A bill for specific performance is an application addressed
to the judicial discretion of a court of equity. "Even if the
plaintiff were entitled to a specific performance of the defend-
ant's agreement, such right is not an absolute one, but rests in
the discretion of the court to be exercised on equitable consid-
erations in view of all the circumstances of the case." *Graves*
v. *Goldthwait,* 153 Mass. 268. From the testimony in the case
it appears that in the use of this property by successors in title
to Hooper there have been departures from the letter of the
restriction in the deed. It is not clear that all of these viola-
tions came to the knowledge of Nicholas Ball or of this com-
plainant. These breaches of the condition were known to the
respondent and, not unreasonably, she might have believed that
they were known to the complainant, and that the restrictions
in the deed had been to some extent waived by him. Now,
upon another violation of the restriction on her part, the pro-
ceeding to compel a conveyance of the property to the complain-
ant and thus destroy the estate of the respondent, in the cir-
cumstances of the case, would not be viewed with favor by a
court of equity. It is one of the principles of equity that it will
not decree a forfeiture. "It will never aid in the divestiture
of an estate for a breach of a covenant on a condition sub-
sequent, although it will often interfere to prevent the divesti-
ture of an estate for a breach of a covenant on condition."
2 Story Equity, § 1319. It is true that the ancestor in title
of the respondent agreed to a reconveyance in the event of a
breach, but to grant a specific performance of that agreement is,
in effect, to decree a forfeiture. Equity has in some cases taken
jurisdiction for the protection of a grantor and ordered specific
performance of a covenant to reconvey in case of a breach of
condition, and thus aided in the divestiture of an estate. This
has usually been in cases where a conveyance has been made by
an aged or infirm person in consideration that the grantee should
support and care for the grantor, with the condition that if the
grantee fails in his obligation he shall reconvey. Upon a breach
of this condition equity has taken jurisdiction and decreed
specific performance. *Stamper* v. *Stamper,* 121 N. C. 251;

*Robinson* v. *Robinson,* 9 Gray, 447. In *Baker* v. *St. Louis,* 75 Mo. 671, affirming and adopting the opinion in *Baker* v. *St. Louis,* 7 Mo. App. 429, specific performance was compelled of a covenant to reconvey. In that case land was conveyed for a street and market house with the provision that as soon as the granted premises should cease to be used for that purpose the parcel of land should revert to the grantor, his heirs and assigns, "and the said party of the second part upon failure to use said market house for the purpose aforesaid (shall) reconvey to said parties of the first part." The court found the justification for the decree for specific performance in the consideration that the covenant "contained the express undertaking on the part of the city to reconvey the property upon a failure to use the market house as stipulated. . . . The conveyance by Peter and Jesse Lindell taken with all its reservations and conditions was in effect nothing more than a dedication upon condition subsequent. . . . The reservation or reversion upon breach of condition was equivalent to a retention of the fee subject to the public easement as appurtenant to the lot from which the strip was severed."

In these cases the circumstances warranted an exercise of the discretion of the court to decree a specific performance. Such circumstances are not presented in the case as bar, and to decree specific performance would be unreasonably to oppress the respondent and would violate equitable principles.

(3)　We are of the opinion that the complainant is entitled to an injunction. He is the possessor of the land which the restriction was made to benefit. In a similar case, *Clark* v. *Martin,* 49 Pa. St. 289, the court held that the remedy asked for was one which the law authorizes courts of equity to grant, to prevent or restrain "the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals." Cases are numerous in which injunctions have been granted to restrain the violation of similar restrictions in deeds, without reference to pecuniary damage. The courts, apparently without hesitation, placing the right to relief upon the sole ground of the disregard of a duty

which the complainant was entitled to have observed. It is urged that an injunction should not be granted, as it does not appear that the restriction contained in the deed from Nicholas Ball to Hooper was part of a general scheme for the development of the remainder of the tract. It must very frequently happen that such restrictions are imposed by the owner of a platted tract of land as part of a general scheme for the improvement and disposition of the platted lots. This is an incident common to many cases of this nature, and naturally has been taken into account by courts, in considering the circumstances surrounding the grant, for the purpose of determining the intent of the restriction. But from these circumstances, which are the common circumstances of many cases, the court is not justified in deducing a principle that, in the absence of such general scheme, complainants are not entitled to the relief of injunction.

As was said in the minority opinion in *Clapp* v. *Wilder*, 176 Mass. 342: "The decisions in which this has been done have not been confined to any particular class of cases, such as, for instance, building schemes and plans of general improvement, but the rule has been applied in other cases and has been recognized in cases where it was not applied." and later in the same opinion, "But conditions are construed as restrictions in such cases, not because courts have any special fondness for, or leaning towards building schemes or plans of general improvement, but because it would be inequitable and unjust as against the owner of adjoining and neighboring estates to construe them otherwise and to permit a party taking an estate with notice of a valid agreement respecting its mode of use and occupation towards such estates to avoid it." In *Clark* v. *Martin*, 49 Pa. St. 289, the court said: "It was objected at the argument that this remedy (injunction) applies only as a means of compelling an observance of the terms involved in a general plan of lots; and this element actually exists in about half of the cases just cited; yet they are not decided on that consideration. It is not because a plan is deranged that the court interferes, but because rights are invaded, or about to be; and this may exist in a plan of two lots, as well as in one of two hundred. The plan often

furnishes the proof of the terms on which sales were made; but the fact of the alleged terms is as effective when proved by a single deed as when proved by a plan.

The respondent relies upon the opinion in the case of *Clapp* v. *Wilder*, 176 Mass. 322. The case of *Clapp* v. *Wilder* is clearly distinguishable from that at bar. It is not and it is not intended as a departure from the general rule laid down in *Whitney* v. *Union Railroad Co.*, 11 Gray, 359, and a long line of Massachusetts cases, but is a case where an injunction was denied because, from the facts, the court found that the restriction was imposed for the personal benefit of the grantor and not for the benefit of his remaining land. In *Clapp* v. *Wilder*, the facts were that one Eaton was the owner of lot B., upon which was his dwelling-house; and lot A., upon which was a store; while negotiations for the purchase of lot A. were pending between Eaton, an invalid, and the defendants, and prior to the delivery of the deed, the grantor told the defendants that, if he sold them the property, he did not wish his view of Central street from his sitting-room window cut off, and he should have some clause inserted in the deed to prevent this; and when the deed was delivered he told the defendants he had put in a clause so that his view of Central street from his sitting-room window should not be cut off, and this was the restriction contained in the deed. From these facts the majority of the court found that the condition was imposed for the grantor's personal benefit, and not for the benefit of the land; and in a suit commenced a number of years after the grantor's death, the court refused to grant an injunction in favor of the owners of lot B.

In the case at bar we can not consider the provision in the deed of Hooper as a form of idle words. It had some purpose. It was intended either for the benefit of the adjoining land, or for the benefit of Nicholas Ball personally. If, upon a reading of the provision by one unacquainted with the circumstances, the advantage sought for the adjoining land is not very clearly shown, the benefit to be derived from the provision by Mr. Ball personally, unconnected with his ownership of the adjoining land, is incomprehensible. The necessary and reasonable pre-

sumption in this, as in all such cases, is that the restriction is for the benefit of the remaining land, and courts will never hold it to be for the personal benefit of the grantor in the absence of circumstances indicating it. In addition to the natural presumption that the restriction was not for the personal benefit of Nicholas Ball, we have the assistance of the language of the provision, "The said J. Hooper, his heirs and assigns shall not convert," &c., and "the said grantee for himself and his heirs and assigns promises to reconvey said estate to said grantor, his heirs, executors, and assigns, in case of any violation of the foregoing promises in this deed." Clearly inapt language to impose a restriction for the grantor's personal benefit during his life. And if the provision was not for the benefit of Mr. Ball it must have been for the benefit of the remaining land. It appears in testimony that on the remaining land was a general store conducted by Nicholas Ball, and later by this complainant. In a rural and fishing community, such as Block Island is, it is of great advantage to land containing a general store to have in its immediate neighborhood a building used for the purposes named in the restriction, to which farmers and fishermen will be constantly attracted. Also the restriction would prevent the use of said land for the purposes of a general store in competition with the general store situated on the remaining land, and the restriction in that way was for the benefit of the remainder of the tract. All the surrounding circumstances fail to show any possible benefit to Nicholas Ball except as owner of the land, and the restriction is clearly in some respects of benefit to the adjoining land. It is unreasonable to object that it does not appear by express language that the restriction is for the benefit of the land. Such language is unusual. In a large number of cases appearing in the reports, where injunctions have been granted, no such language has been incorporated in the deed.

This case, in our opinion, is not governed by that of *Clapp* v. *Wilder*. It fall clearly in the rule of *Whitney* v. *Union Railway*, 11 Gray, 359; *Hopkins* v. *Smith*, 162 Mass. 444; and other cases in Massachusetts and other jurisdictions.

In *Parker* v. *Nightingale*, 6 Allen, 341, the court said: "Restrictions and limitations which may be put on property by means of such stipulations derive their validity from the right which every owner of the fee has to dispose of his estate either absolutely or by a qualified grant or to regulate the manner in which it shall be used and occupied. So long as he (the grantee) retains the title in himself, his covenants and agreements respecting the use and enjoyment of his estate will be binding on him personally and can be specifically enforced in equity. When he disposes of it by grant or otherwise, those who take under him cannot equitably refuse to fulfill stipulations concerning the premises of which they had notice. It is upon this ground that courts of equity will afford relief to parties aggrieved by the neglect or omission to comply with agreements respecting real estate after it has passed by mesne conveyance out of the hands of those who were parties to the original contract."

In *Whitney* v. *Union Railway Company*, 11 Gray, 359, the court considered the effect of a restriction upon the use of land contained in a deed. The case was a suit in equity for an injunction against a subsequent grantee to restrain a violation of the provision in the deed. The court said, at p. 364: "In like manner, by taking an estate from a grantor with notice of valid agreements made by him with the former owner of the property, concerning the mode of occupation and use of the estate granted, the purchaser is bound in equity to fulfill such agreements with the original owner, because it would be unconscientious and inequitable for him to set aside and disregard the legal and valid acts and agreements of his vendor in regard to the estate, of which he had notice when he became its purchaser. In this view, the precise form or nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of

a valid agreement concerning it, which he cannot equitably refuse to perform. Sugd. Vend. (11th ed.) 734–743. *Bedford* v. *British Museum*, 2 Myl. & K. 552. *Bristow* v. *Wood*, 1 Collyer, 480. *Whatman* v. *Gibson*, 9 Sim. 196. *Schreiber* v. *Creed*, 10 Sim. 9. *Barrow* v. *Richard*, 8 *Paige*, 356, 360.

"The validity of agreements similar to those in the plaintiff's deed to White has been also recognized and established, and their performance enforced in equity, as against subsequent purchasers with notice, upon the ground that such stipulations create an easement or privilege in the land conveyed, for the use and benefit of the grantor, and those who might afterwards claim under him as owners of adjacent land, of which the land granted originally formed a part. In such cases, although the covenant or agreement in the deed, regarded as a contract merely, is binding only on the original parties, yet, in order to carry out the plain intent of the parties, it will be construed as creating a right or interest, in the nature of an incorporeal hereditament or easement, appurtenant to the remaining land belonging to the grantor at the time of the grant, and arising out of and attached to the land, part of the original parcel, conveyed to the grantee. When therefore it appears by a fair interpretation of the words of a grant that it was the intent of the parties to create or reserve a right, in the nature of a servitude or easement, in the property granted, for the benefit of other land owned by the grantor, and originally forming with the land conveyed one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee, and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land."

In *Tulk* v. *Moxhay*, 2 Phillips, 774, it appeared that land had been conveyed with a restriction upon its use contained in the deed. The land had come to the ownership of the defendant. The defendant with notice of the covenant contained in the conveyance manifested an intention of acting in violation of the covenant. In a bill praying for an injunction to restrain the defendant Lord Chancellor Cottenham said: "It is said

that, the covenant being one which does not run with the land, this court cannot enforce it; but the question is, not whether the covenant runs with the land but whether a party shall be .permitted to use the land in a manner inconsistent with the contract entered into by his vendor and with notice of which he purchased. Of course, the price would be affected by the covenant and nothing could be more inequitable than that the original purchaser should be able to sell the property the next day for a greater price, in consideration of the assignee being allowed to escape from the liability which he had himself undertaken." And further, the court said: "If an equity is attached to property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased."

A case in point is *Post* v. *Weil*, 115 N. Y. 361. One Hogan was the owner and occupier of two estates; one "Monte Alta" and the other "Cleremont" in upper New York city. In 1811 Hogan and wife deeded the two estates to trustees. In a few months thereafter Monte Alta was conveyed to one Mark by deed in which were joined Hogan and wife and the trustees as grantors. The deed, which was a warranty deed, contained in the habendum clause the following provisions, viz. "Provided always, and these covenants are upon this express condition, that the aforesaid premises shall not, nor shall any part thereof, or any building or buildings thereon erected or to be erected, be at any time hereafter used or occupied as a tavern or public house of any kind." The court said, at page 371: "If we can construe this clause as an obligation to abstain from doing the thing described, which, by acceptance of the deed, becomes binding upon the grantees as an agreement, enforceable in behalf of any interest entitled to its protection, I think we are in conscience bound to give that construction." And the court further said: "Now the obvious and only purpose which Hogan could have had in view, when the contract was made, was to protect the adjacent property which he then owned, from being injured by the vicinity of an undesirable structure or business. I think we all will agree that the presumption here, as in every

other case, when a restriction is inserted in a deed against undesirable structures or trades, is that the insertion was for the purpose of protecting rights, which the grantor had in adjacent property. In this case the clause obviously was for the benefit of the Cleremont estate. . . . The clause in question, in the case at bar, was intended as a restriction, created for the benefit of the adjoining property, expressed in the strongest terms, and which was enforceable as a covenant running with the land and was not a condition subsequent, imposed for the personal benefit of the grantors and their heirs."

*Watrous* v. *Allen*, 57 Mich. 362, is a proceeding in equity to enforce, by injunction, a condition contained in a deed restricting the use of premises conveyed. Cooley, C. J. writing the opinion of the court, approved those cases in which it is held that the fact that a penalty or forfeiture is imposed for doing a prohibited act is no obstacle to the interposition of equity by injunction. The opinion cites with approval *Clark* v. *Martin*, 49 Pa. St. 289, and *Whitney* v. *Union Ry. Co.*, 11 Gray, 359, in which cases the remedy was sought by a grantee of the party in whose favor the condition was reserved, and an injunction was granted on the ground that the condition was imposed for the benefit of the remaining land of the grantor. In *Clark* v. *Martin*, 49 Pa. St., 289, the defendant at the time of filing the bill was the owner of building and lot immediately adjoining to the south. Both lots were formerly parts of a large lot which, before 1814, was held by one Henry and wife. In 1814 Henry and wife conveyed the lot, which at the time of filing the bill belonged to the defendant, upon the express condition that the grantees, their heirs and assigns, should not build any buildings, except out-buildings for the accommodation of the dwelling-house, exceeding the height of ten feet from the level of the ground. The defendant's lot passed to him by mesne conveyance, and the other lot passed by conveyance to the complainant. The bill alleged that it was the intention of the defendant to build on the corner lot, without regard to the restriction, under pretence of a right so to do, and prayed an injunction to restrain the defendant. The court said: "Here

the duty of the defendant is so plain that one may read it run-
ning; it is clearly inscribed on every link of the chain of his
title to the lot.    He took his title expressly on the terms
already briefly mentioned.    He was not to erect on the back
part of his lot any building higher than ten feet, afterwards
changed to eleven.    To whom then did he owe the duty?    No
one doubts that it is to the grantor who received or imposed
the duty, and to his heirs and assigns.

"But did the grantor reserve this duty to himself, his heirs
and assigns, as a mere personal duty, and thus retain in himself
or them the vain right of saying 'that lot is not mine, but the
owner is subject to my pleasure in the mode of building upon
it?"

"Common sense forbids this, and the law would not allow
itself to be troubled with such vain engagements.    .    .    .
We have no other resource, therefore, than to attribute the
restriction to the purpose of benefiting the adjoining lot then
owned by Henry.    Common sense cannot doubt its purpose
and thus it becomes plain that the duty created by the con-
dition and restriction is a duty to the owner of the adjoining
lot, whoever he might be."

(4)    From this review of the authorities we are of the opinion that
the complainant, as the owner of the land for the benefit of
which the restriction in the Hooper deed was imposed, should
have an injunction as prayed, unless, as the respondent claims,
"the complainant's action is barred by laches and he is estopped
from claiming and has waived the breach" or "the complain-
ant's action is barred by our statute of limitations."

From the testimony in the case it appears that in the life-
time of Nicholas Ball and since the ownership of the adjoining
land by this complainant there have been certain slight depart-
ures from the terms of the restriction in the deed on the part
of the owners of the Hooper lot.    At one time a portion of the
building was used as a place to build a number of boats, but
blacksmithing formed a considerable part of the process of
boat-building.    A portion of the building was for a time used
as a place of meeting for the Masonic and Odd Fellows lodges of
the town, after their regular meeting place had been destroyed

by fire.   A part of the building was used for a considerable time as a cobbler's shop, but it appears by the testimony that the repairing of shoes was carried on in connection with harness making, one of the trades permitted by the restriction in the deed.   Another portion of the building was used for the making, repairing, and storing of sails, but the repairing of tackle was permitted by the deed.   All these departures were violations of the letter of the restriction rather than its spirit.   It is not shown clearly by the testimony that Nicholas Ball was aware of these violations of the condition in the deed.   The complainant admits that he went to the cobbler's shop to have harness repaired, but claims that he knew of no violation of the deed until he learned of the acts of this respondent and her tenants, and that then, at once, he commenced this suit.   It is abundantly supported by authority, however, that a permission for the use of a portion of the building for some trades, such as shoe-making, or as a sail loft, or the temporary use of a portion of the building for holding society meetings, will not prevent an insistence upon the restriction, to prevent a violation of the condition by other uses of the building, such as for the sale of intoxicating liquors or for the keeping of horses or swine.

We are of the opinion, from an examination of the testimony, that the complainant's right to an injunction is not barred by laches or by the statute of limitations, and that he has not waived the breach of the condition contained in the Hooper deed.   The complainant, as owner of the remainder of the tract of land, which was in Nicholas Ball after the deed from said Ball to John W. Hooper, is entitled to an injunction restraining the respondent from any violation of the restriction contained in said deed to Hooper, except as to the trade of repairing shoes, the use of which trade we find that the complainant has permitted in a room upon the second floor of said building, and as to the continued use of said trade in said place in said building the respondent should not be restrained.

The parties may present a form of decree in accordance with the foregoing opinion.

Sheffield, Levy, and Harvey, for plaintiff.

James Tillinghast, for defendant.