John M. PAROLISI et ux.

v.

The BEACH TERRACE IMPROVE-
MENT ASSOCIATION, INC.,
et al.

80–312–Appeal.

Supreme Court of Rhode Island.

July 29, 1983.

John F. Cuzzone, Samuel A. Miller, Quinn, Cuzzone, Geremia & Pennacchia, Providence, for plaintiffs.

Seth K. Gifford, Levy, Goodman, Semonoff & Goff, Providence, for defendants.

OPINION

KELLEHER, Justice.

This is a Superior Court civil action in which the plaintiffs (the Parolisis) seek specific performance. As will be seen, this controversy involves something more than the usual specific-performance disputes that come before us.

Beach Terrace is the name of a community located in Bristol along the shores of the upper reaches of Narragansett Bay. The defendant Beach Terrace Improvement Association, Inc., is a nonprofit corporation whose corporate purposes are defined, "to inculcate the spirit of friendship among the residents, and to promote activities for the betterment of the Beach Terrace Community." Membership in the association is limited to residents or property owners living in an area of Bristol bounded on the north by Beach Road and Cliff Drive, on the east by the westerly side of Hope Street, on the south by Colonial Road, and on the west by Narragansett Bay.

The Parolisis are the owners of an imposing residence situated at 1 Beach Road. Their waterfront premises are located on the northerly side of the road at its westerly terminus. One of the Parolisis' predecessors in title was Aram J. Pothier, a former governor of the State of Rhode Island. On September 30, 1939, the testamentary trustee of the late Governor Pothier's will, for a consideration of $300, conveyed to the association by quitclaim deed a right-of-way to the beach which measures approximately five feet in width and ninety feet in length. The Beach Terrace strip, so called, runs along the northerly boundary of the Parolisi

property and the southerly boundary of property owned by Joseph F. Motta and his wife. The Mottas live on Surf Drive, a short dead-end street that acts as the easterly boundary of both the Parolisi and the Motta properties. The strip begins at Surf Drive and runs westerly, ending at the bay's high-water mark.

The trustee's deed provides that the conveyance is subject to the condition that if the strip is used for any purpose other than ingress to and egress from the beach or by persons other than the members of the association, the parcel "shall immediately revert to and be vested in" the trustee and all right of the association to the strip "shall cease and determine." The deed also states that the association will, upon request, execute a deed "confirmatory of said reverting and revesting as required."

The Parolisis in this Superior Court civil action claimed that the restrictions in the 1939 deed have been violated and have asked that the association be ordered to execute a deed reconveying to them whatever right, title, or interest had been conditionally conveyed to the association in 1939. A Superior Court justice, after consideration of the evidence before him, denied the Parolisis' request for specific performance. They claim that the trial justice erred when he refused to order the association president to execute a deed reconveying the right-of-way to them as successors to the trustee.

John M. Parolisi and his wife Camille have been living at 1 Beach Road since 1959. Mr. Parolisi told the trial justice that even though he had been living in the Beach Terrace area for over twenty years, he still did not know half of the people who lived in the area. He complained about people who came onto his grounds and vandalized his property. He described the association president, "Bob" Koehne, as a "nice guy * * * [who] is always trying to appease me." The situation had become, in Mr. Parolisi's words, "very annoying, putting up with all this foul language * * * it gets to a

point where you just can't put up with it any more."

In essence, the evidence adduced at trial relative to the violations of the members-only-path proviso related to the following individuals: (1) pupils who attended the annual learn-to-swim campaign conducted at Beach Terrace by the town of Bristol's recreation department, (2) house guests of the association membership, (3) shellfishermen who would go on the beach in search of such morsels as clams, quahogs, and little necks, (4) boisterous youngsters who made themselves heard at 11 p.m., (5) Public Works employees who would walk along the beach checking for any evidence of sewerage escaping into the bay, and (6) an unidentified police officer who insisted that he and his offspring had a right to use the path.

When Mr. Parolisi was reminded that two of the students at one of the town's swimming seminars appeared to be his grandchildren, Mr. Parolisi made it clear that he had no reason to complain about activities that were good for children. The association's president was of the belief that the association's bylaws gave the members' house guests the right to use the path. The president explained that when he observed the fishermen, he informed them that the path was for the exclusive use of the members of the association and that if they wished to continue their pursuits, they could just as easily go down to Beach Road and enter the beach area from there.

The association's chief executive also testified that upon hearing the 11 p.m. serenaders, he personally went down to the beach and told the juvenile pranksters to leave. Nobody objected to the Public Works employees' use of the path to check on the sewerage condition. There was evidence that at some time the police officer's son had used the path and that the officer in turn had used the path to summon the son home. Both the son and the father were told that the path was reserved for members of the association, and the evidence is quite vague about whether the officer was or was not a member of the

association. Incidentally, Mr. Parolisi, who had been totally unaware of the presence of the fishermen, was aware that children could reach the beach area by walking along or on top of the seawall that fronted his property and the property of the Mottas.

Apparently sometime in 1969 the association erected a gate at the Surf Drive entrance to the path. A photograph indicates that hanging over the gate was a sign that read, "Beach Terrace Improvement Association Members Only," and another photographic exhibit reveals that attached to the front of the gate in 1978 was a list of the members, giving their names and addresses. In 1978, for instance, there were eighteen members in the association. The membership had also agreed that the path would not be used from 10 p.m. to 6 a.m. Notice of this rule was published in the Bristol Phoenix, a newspaper circulated within the town of Bristol. The president also reported that among those who used the path were the Parolisis' gardeners, who would go down the path trailing their mowers behind them and then enter the Parolisi property from the path.

In his written decision the trial justice stated that he had no doubt that the annual use of the path by the swimming classes violated the members-only stipulation, but he was not convinced that the other children who had traveled along the path were not part of the association's membership. He could not fault the use of the path by the residents' house guests because he thought the house guests fell within the contemplation of the trustee's grant. He did not classify the fishermen's use of the right-of-way as a major breach because of the fact that once their presence was known and they were told to leave, they left and never returned.

After making a few further comments on the evidence, the trial justice referred to Ball v. Milliken, 31 R.I. 36, 46, 76 A. 789, 794 (1910), where this court noted that a request for specific performance is addressed to the discretion of the trial justice and recognized the principle that equity abhors a forfeiture. In the trial justice's opinion, the few departures from the restrictions in the 1939 grant did not justify an order for specific performance. However, the trial justice did grant affirmative injunctive relief by directing the association and its president to adhere to the restrictions set forth in the trustee's deed. He also ordered the association to install on its gate a locking device to be maintained in good working order and directed the association to restrict the issuance of keys solely to the members of the association so that they may lock and unlock the gate as they leave and enter the right-of-way.

The actions taken by the trial justice track the actions taken by the court over a half century ago in the Ball v. Milliken case where the plaintiff was seeking specific performance of a deed calling for a reconveyance of premises that were to be used solely for the specific purposes of "[b]lacksmithing, wheelwrighting, repairing tin, copper, saddles, harness, tackle, * * * and repairing of fire arms, and no other purpose whatever * * *." However, the defendant successor in title had allowed the premises to be used for a variety of purposes, including the repairing of boots and shoes, the repairing of watches and jewelry, the keeping of swine and horses, and the sale of intoxicating liquors. The Milliken court enjoined the defendant from carrying on any trade in the building erected on the premises other than that of repairing shoes, which had always been considered as being part of the harness-repair operation.

We cannot fault the trial justice, for in our opinion, the injunction he fashioned is a model of the proper balancing of the equities. We see nothing in the record that justifies any modification of the actions he has taken.

The plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed.[1]

---

1. In affirming the judgment of the trial justice, we are also affirming his refusal to hold the

association in contempt of the 1963 consent decree entered in an equitable action in which the Parolisis sought a forfeiture and specific performance for the association's alleged failure to restrict access to its right-of-way to Beach Terrace residents. In the decree, the association agreed to abide by the limitations and conditions found in the 1939 conveyance and to "make every effort to see said limitations are not breached." The trial justice refused to hold the association in contempt because he was of the opinion that the association "did all that could be reasonably expected of it to comply with * * * [the] 1963 decree."