[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Plaintiffs Stephen Healey and Constance Healey (Healeys) have brought this declaratory judgment action pursuant to Rule 57 of the Superior Court Rules of Civil Procedure. Sitting without a jury, this Court received evidence and testimony relative to whether the Healeys, in accordance with certain deed restrictions, are properly entitled to a reversion in title to parcels of real property currently held by Defendants.
On November 26, 1965, the Healeys acquired title to a parcel of land with frontage on the Sakonnet River, located in Tiverton, Rhode Island. In 1967, the Healeys drafted a plat subdividing the parcel into six lots called High Hill Point Estates. The plat was subsequently revised on several occasions and eventually approved. Early in 1972, a declaration of restrictions concerning the plat's six lots was filed in the Town of Tiverton land evidence records beginning at page 671 of book 108. Paragraph nine of the declaration specifically states:
 The time period required for erection of the approved building shall run from the date of title passing from the grantor to grantee to not more than five calendar years. The breach of this express covenant shall result in a reversion of both equitable and legal title from the grantee to the grantor.
Based on the above-quoted restriction, the Healeys have filed the instant declaratory judgment action against three of their successors in interest: Joseph J. and Mary A. Chaves (Chaves), Dewitt Clinton Clemens and Phoebe Clemens (Clemens), and A. Edmund and Edythe Donatelli (Donatelli). Since, for the most part, different factual circumstances pertain to the claims against the respective Defendants, each shall be considered separately herein.
I. DEFENDANTS DEWITT CLINTON CLEMENS AND PHOEBE CLEMENS
On July 26, 1973, the Healeys executed a mortgage deed conveying lots four and six to Industrial National Bank as security for a mortgage. The Healeys thereafter defaulted on their mortgage obligations. Pursuant to the terms of mortgage deed, Industrial National Bank exercised its power of sale and conveyed the property to itself on October 14, 1976. On November 10, 1981, by a signed written instrument, Stephen E.S. Healy revoked, released, and waived any and all pending interest and benefits under the plat's original declaration of restrictions.
On April 25, 1984, Fleet National Bank, successor in interest to Industrial National Bank, conveyed lots four and six to John W. and Alice N. Hogan subject to restrictions of record. The Hogans thereafter conveyed lots four and six to Dewitt Clinton Clemens and Phoebe Clemens on September 26, 1986 for $150,000. In May 1986, Phoebe Clemens deeded her interest in the property to her husband, Dewitt Clinton Clemens. Fleet National Bank was originally named as a party defendant in its capacity as a mortgagee. That mortgage has since been discharged and Fleet National Bank is no longer involved in this action.
The Healys contend that the language in paragraph nine of the declaration of restrictions now entitles them to a reversion in title to lots four and six, presently owned by Clemens. They submit that since an approved building was not constructed on the property within the five year period, title to lots four and six automatically reverted. Clemens conversely contends that any and all rights of reversion contained in paragraph nine relative to lots four and six were conveyed by mortgage deed to Industrial National Bank on July 25, 1973, and subsequently foreclosed when the Healeys defaulted on their mortgage.
It is undisputed that the Healeys executed a mortgage deed to lots four and six in favor of Industrial National Bank on July 25, 1973. The terms of the mortgage deed specifically provided that the Healeys granted to Industrial National Bank the property described therein and ". . . all other rights thereunto belonging or in anywise now or hereafter appertaining, and the reversionand reversions, remainder and remainders, rents, issues and profits thereof . . ." (Emphasis supplied). However, the mortgage deed also specifically indicated that parcel number two was subject to the restrictions of record. The crucial issue, therefore, is whether the language indicating that parcel two was subject to restrictions of record conflicts with and/or contradicts the terms indicating that the Healeys had conveyed their reversionary interest.
Prior to construing the mortgage instrument at issue herein, however, it is necessary to distinguish between a reversion and a restriction. A reversion is that part of an estate remaining in the grantor after conveying an estate smaller than that which existed prior to the conveyance. Boyer, Survey of the Law of Property, 33 (1981). The reversion is a vested interest in the grantor and is freely alienable. Id. Restrictions on the use of property, however, are equitable servitudes binding on future grantees that govern and control the appropriate use of land.Id. at 539.
When construing the terms and provisions of a mortgage instrument, the court must give meaning to all the words and clauses used in ascertaining the intention of the parties. 59 C.J.S. Mortgages, § 152. Prior to executing the mortgage deed, the Healeys imposed certain land use restrictions on the lots in the subdivision. Also contained in these restrictions was a reversion to the Healeys in the event that subsequent grantees did not erect an approved building within a five year period. Based on the language in the deed indicating that the property remained subject to the restrictions of record, the Healeys contend that the mortgage deed did not operate to convey their reversionary interest to Industrial National Bank. This argument is entirely without merit.
The law is clear on the distinct difference between a reversion and a restriction. Mere inclusion of the language creating the reversion in paragraph nine of the declaration of restrictions does not otherwise transform the character of this distinct property interest. The reversion stands alone as a freely alienable property interest separate and apart from the specific land use restrictions. In clear and unambiguous language, the mortgage deed recites that the property remains subject to the restrictions of record. While this language is entirely consistent with the axiom that equitable servitudes are restrictions on the use of land binding on future grantees, it does not otherwise affect or limit the alienability of the reversionary interest.
Given that the reversion exists separate and apart from the restrictions, this Court is convinced that there is no conflict or contradiction in the terms of the mortgage deed. As one clause provides for restrictions, a separate clause specifically addresses the reversion. Having voluntarily executed the mortgage deed, the Healeys are clearly bound by the unambiguous language indicating that in addition to the land described in the deed, they also conveyed their reversionary interest. When Industrial National Bank exercised its right of foreclosure, the Healeys' rights in both the property and the reversion were terminated.
A careful reading of the clear and unambiguous terms of the mortgage deed satisfies this Court that Healeys did, in fact, convey this reversionary interest to Industrial National Bank. Subsequent to the Healeys' default on their mortgage obligations, the bank exercised its right of foreclosure and purchased the property at the foreclosure sale free of the reversion. As a successor in interest of Industrial National Bank, therefore, this Court finds that Clemens is not now bound by the reversion contained in paragraph nine of the declaration of restrictions. Although Clemens raises various other meritorious arguments asserting the invalidity of the Healeys' reversion, a detailed discussion of each is unwarranted given this Court's decision.
II. DEFENDANTS A. EDMUND AND EDYTHE DONATELLI AND JOSEPH J. ANDMARY A. CHAVES
The Donatellis currently own lot five in the subdivision. The Healeys originally conveyed lot five to a partnership named Fenway Associates in March 1976. Fenway Associates, of which Edmund Donatelli was a general partner, thereafter conveyed lot five to the Donatellis in 1986.
Sometime in 1975, Stephen Healey entered into negotiations with Fenway Associates and Defendant Edmund Donatelli concerning the development and construction of a nursing home on lots one and two of the subdivision. Although construction of a nursing home in the subdivision clearly is not permitted under paragraph eighteen of declaration of restrictions, it is apparent from the testimony at trial that Stephen Healey intended to disregard the self-imposed restrictions and proceed with construction. Plans for the nursing home were drawn and negotiations between the Healeys, Fenway Associates, and Edmund Donatelli continued until approximately 1980. Since Donatelli was working cooperatively with the developer on the nursing home project, Stephen Healey admittedly told Donatelli that the five-year building requirement would never be a problem.
The Chaves are the current owners of lot three in the subdivision. Lot three was originally conveyed to Gerald and Kathleen Connell in July 1973. The Connells subsequently conveyed lot three to Ten-Three Company in May 1977. On June 30, 1980, Stephen Healey, as trustee, by quitclaim deed specifically released Ten-Three Company from all restrictions contained in the declaration of restrictions. Ten-Three Company then conveyed lot three to the Chaves in 1985. The Chaves, in December 1988, gifted lot three to the Town of Tiverton.
It is undisputed that the Tiverton subdivision ordinance requires the developer to complete all subdivision roads within two years of filing an approved plat. The testimony at trial, however, indicates that the developers never completed construction of Sesh Drive, the subdivision's only roadway. Both Stephen and Constance Healey admitted at trial that they, as the developers of the subdivision, had an affirmative obligation to install the roadway. As a consequence of the Healeys' failure to construct Sesh Drive, all three party defendants in the instant action have been denied residential building permits. The Tiverton building inspector will not issue building permits until the road is completed. Edmund Donatelli, experienced in road construction, credibly testified that completion of Sesh Drive could cost approximately $45,000 — $66,000.
In this declaratory judgment action, the Healeys now seek to enforce the reversion in paragraph nine of the declaration of restrictions against both the Donatellis and the Chaves. The Healeys contend that since neither the Donatellis nor the Chaves have erected an approved building within the five-year period, title to lots three and five has reverted back to them under the provisions of paragraph nine. Various arguments have been asserted on behalf of the Donatellis and the Chaves challenging the validity of the Healeys' reversionary interest.
The Healeys seek to invoke this Court's equitable jurisdiction in determining whether they are properly entitled to a reversion. It is well established that the right to demand a conveyance of land constitutes an equitable interest. Ball v.Milliken, 31 R.I. 36, 43, 76 A. 789, 793 (1920). It is axiomatic that he who seeks equity must do equity. Tormey v. Cassidy,69 R.I. 302, 33 A.2d 181 (1943). Equity does not view with favor conditions that could result in the forfeiture of one interest in property. See Ball, supra, at 46, 76 A. at 795. The right to a reversion is not absolute, but is subject to the discretion of the trial court after equitable consideration of all relevant circumstances. Id.
The Healeys originally conveyed lot five to the Fenway Associates in 1976. Although the reversion in paragraph nine requires an approved building within five years, the Healeys waited until 1988, some twelve years after the original conveyance, to initiate legal proceedings in an attempt to divest the Donatellis of their interest in lot five. In addition, Stephen Healey admitted that he orally assured Edmund Donatelli prior to 1980 that the five year building requirement would not be enforced. The same factual circumstances exist relative to the lot three, which was originally conveyed in 1973, and released from the restrictions of record in 1980 by a quitclaim deed bearing Stephen Healey's signature. Now, fifteen years after the original conveyance, the Healeys seek to divest the Chaves of their interest in the property.
Notwithstanding this long and inexcusable delay, the Healeys have failed to fulfill their obligations as the subdivision's original developers. First, they entered into negotiations and actively attempted to construct a nursing home on lots one and two in complete violation of the very restrictions they had imposed on the entire subdivision. Moreover, having acknowledged at trial their role as developers and their responsibility for building Sesh Drive, the subdivision's only roadway still remains unfinished. The Healeys' failure to fulfill their obligation to build the road has prevented the Donatellis, Clemens, and Chaves from obtaining residential building permits.
It is clear from a review of the facts that equity should not and will not enforce the reversion sought by the Healeys. As drafters of the reversion and developers of the subdivision, they alone must shoulder the responsibility for their inexcusable delay and failure to fulfill their affirmative obligations. Under such circumstances it would be patently unjust, unfair, and inequitable to divest the Defendants in this case of their interests in their respective properties.
After a thorough review of the record, this Court finds that, with respect to Defendant Clemens, the Healeys conveyed their reversion in lots four and six to Industrial National Bank by mortgage deed. Following default, Industrial National Bank foreclosed on the mortgage and terminated all of the Healeys' rights in the property. As a successor in interest to Industrial National Bank, Clemens possesses valid title to lots four and six free and clear of any reversion claimed by the Healeys. Notwithstanding this finding, this Court further concludes that, under the circumstances described herein, equity would likewise preclude the Healeys from enforcing the reversion against Clemens. Given their inexcusable delay, failure to fulfill their affirmative obligations, and other inappropriate conduct, this Court further finds that equity also precludes the Healeys from enforcing the reversion against either the Donatellis or the Chaves.
Counsel shall prepare an appropriate judgment for entry.