DELIA TORMEY *et al. vs.* MARY CASSIDY *et al.*

JULY 2, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is a bill in equity to have certain funds in the possession or control of the respondents, Mary Cassidy and the Savings Bank of Newport, transferred to the estate of Margaret Cassidy, late of the city of Newport, who died intestate on December 9, 1940. Delia Tormey, a sister of the deceased, was the sole complainant in the orig-

inal bill. Subsequently to the bringing of that bill, John C. Burke was appointed administrator of decedent's estate and he was then added as a party complainant in an amended bill. After hearing in the superior court on bill, answer and proof, and decision thereon, a final decree was entered, dismissing the bill. The cause is before us on the complainants' appeal from such decree.

The main question in this cause is whether the sum of $11,165, in savings account numbered 4597 in the respondent bank in the names of "Mary Ellen Cassidy or Margaret Cassidy or the survivor of them", belongs to Mary Ellen Cassidy or to the estate of Margaret Cassidy. Mary contends that she is entitled to that sum because, on March 5, 1923, Margaret made an irrevocable gift to her of a so-called joint interest in that account and in all subsequent additions thereto. The bank contends that, in view of the form of the account and in the absence of notice to the contrary, it was legally bound to pay and apply the moneys in such account as Mary directed. The complainants contend that Margaret never intended to make a present gift to Mary of a so-called joint interest in said account, but that she added Mary's name thereto solely for her own convenience and purposes. They therefore conclude that the sum in question properly belongs to Margaret's estate.

It appears in evidence that Margaret, a single woman, had two other sisters, Mary and Sarah, who were also single, in addition to her married sister, Delia Tormey. Margaret, Mary and Sarah were engaged in domestic service most of their lives in Philadelphia, New York and Newport. Delia and her family lived in New Rochelle, New York, for at least the past twenty years. Other than rather frequent visits to her home by Margaret and Mary, when they were both working in New York, and some occasional visits by Delia to one or more of her sisters in Newport, there was no great intimacy between Delia and her three sisters.

It was otherwise in the case of Margaret and Mary. They were very close to each other and, while both were employed

in the city of New York, they apparently deposited their respective surplus earnings in a savings account in the Emigrant Industrial Savings Bank of that city, which account stood "In acct. with Margaret Cassidy for sister Mary Ellen Cassidy" until it was closed in 1936. On January 28, 1936, the $6,856.35 from this account was deposited in the respondent bank in account numbered 4597, which is the account involved in this cause and which at that time had stood for almost thirteen years in the joint names of Margaret and Mary.

The evidence further shows that on October 12, 1907 Mary opened savings account numbered 9976 in her own name alone in the respondent bank with a deposit of $50 and that this account had increased to $1600 by 1922. On September 30, 1922, she caused the bank to add Margaret's name to this account, so that, until Margaret died in 1940, it stood in the names of "Mary E. Cassidy or Margaret Cassidy, and payable to either, or the survivor of them." When the account was thus changed, Mary told Margaret and the latter went to the bank and signed a signature card. All moneys thereafter deposited in the account belonged to Mary and all withdrawals therefrom were made by her. The balance in the account at the time of Margaret's death was $4200.

According to the evidence, account numbered 4597, which is the one in question here, was opened by Margaret in her name alone on September 1, 1905 with a deposit of $100. When, on March 5, 1923, only six months after Mary had added Margaret's name to her account, Margaret caused Mary's name to be added to account 4597, the amount thereof was $3438.23. At that time, Margaret told Mary what she had done, and the latter then went to the bank and signed a signature card in connection with this so-called joint account.

Between March 5, 1923, when account 4597 was thus changed by Margaret, and December 9, 1940, when she died, the account showed deposits in the total sum of $11,165.

On January 28, 1936, the sum of $6856.35 was deposited in this account, which sum, as we have already stated, came from the account in the Emigrant Industrial Savings Bank in the city of New York. Other deposits in this account were apparently made by both Margaret and Mary, and the withdrawal orders in connection therewith were sometimes signed by one and sometimes by the other.

In June 1928 the three sisters, Margaret, Mary and Sarah, bought a house in Newport for $6000. This amount was paid by the assumption of an existing mortgage for $3000 and $3000 in cash, each sister contributing $1000 to the latter sum. Sarah withdrew $1000 from her own individual account in the respondent bank. Margaret's and Mary's shares were paid by a withdrawal, on June 7, 1928, of $2000 from account 4597. The withdrawal order for this sum was signed by Margaret. There is no evidence that Margaret ever requested or expected to be repaid $1000 by Mary, and no evidence that Mary ever promised to repay her. It is well to recall here that there were ample funds in the account opened by Mary, hereinbefore identified as account 9976, to meet her share of the cash payment for the purchase of the house.

Margaret's health failed in 1934. Mary thereupon gave up her work and returned to Newport with her. From that time until Margaret died, the three sisters lived together in the house which they had bought in 1928, sharing equally the expenses of maintaining it. Mary was apparently the manager of the household. During all the time that Margaret, Mary and Sarah lived as one household, they seldom saw their sister Delia Tormey or any of her daughters.

Following Margaret's death, Mary, on December 16, 1940, closed both account 4597 and 9976, and caused the respondent bank to transfer the balances in these two accounts to a new account, numbered 59,583, in the names of "Mary E. Cassidy or Sarah J. Cassidy, payable to either or the survivor of them." On the same day, Mary withdrew from this new account $524.62, and she also received from the

bank the entire balance of $101.88 in account numbered 57,626, which had always stood in Margaret's name alone. With these moneys she paid the undertaker for the funeral of Margaret.

The complainant Delia Tormey and her daughter Theresa Murray testified that, when they visited Margaret in Newport in September 1940, Margaret told them that she kept the bankbook of account 4597, which is the one in dispute here, in the drawer of a dresser, or washstand, in her room. On this point Mary testified that the bankbook and all other valuables belonging to Margaret and herself were kept in a valise in a closet of her, Mary's bedroom; that the valise was always locked; and that both she and Margaret had a key to that valise.

The substance of Delia Tormey's testimony on the basic issue in this cause is that, on that same visit in September 1940, Margaret told her that she, Margaret, had a large sum of money in the bank; that she was going to make a will; and that she intended to leave all that money to her. Delia's daughter Theresa testified to the same effect. Another daughter, Kathleen McClellan, who visited Margaret in October 1940, gave testimony of a similar nature. From such testimony the complainants argue that Margaret never intended to make a present gift to Mary of a so-called joint interest in account 4597 when, in 1923, she caused the bank to add Mary's name to that account. As a matter of fact, Margaret did not make a will and she never changed the account.

The testimony on the vital question at issue, in addition to the documentary evidence, came principally from Mary. The substance of her testimony is that both she and Margaret intended to give to each other a present so-called joint interest in their respective accounts. On cross-examination she testified that "everything was understood; we both owned the same joint accounts." And again, referring to Margaret and herself: "She knew she could draw from my account as I could draw from hers, because that was the

understanding between us, we could both go down to the bank and draw out of both, and we did, when I needed it."

In a decision from the bench, the trial justice reviewed the conflicting evidence and found that account 4597 "belonged to Mary and Margaret jointly, long before Margaret died, and became the property of Mary on the death of Margaret." He distinguished this cause from one where a single account is transferred by one sister to herself and another sister, no consideration coming from the other side, "but it's a case of an agreement to form a partnership of a kind; a partnership partly defined and left to interpretation in the matter of details and usually understood by the sisters."

The complainants argue that they are entitled to the moneys in account 4597 because, according to the trial justice, Margaret did not make an absolute gift to Mary of a so-called joint interest in that account; that the finding of a partnership was "the creature of imagination. It had no substantial basis in the evidence"; and that even if the trial justice was correct in his finding of a partnership, "the complainant administrator was entitled to equitable relief to preserve the distributive portion of the decedent's estate in such partnership assets, which the respondent Mary is threatening to use and claiming as her sole property."

A fair reading of the trial justice's decision as a whole does not warrant the conclusions that the complainants seek to draw therefrom. It is clear to us that he did not use the word "partnership" in its technical sense, but that he used that term in a qualified sense to express the thought that, in September 1922 and March 1923, Mary and Margaret, as the result of an agreement between them, had each given to the other an absolute and present so-called joint interest in their respective accounts.

In considering complainants' appeal from the decree in this cause, the question for us to determine is whether the decree was warranted on the facts established by the evidence, and not to decide whether the reason for the decree given by the trial justice was good or bad. *McKittrick* v.

*Bates,* 47 R. I. 240. See *Massart* v. *Narragansett Electric Co.,* 54 R. I. 154, 159. Furthermore, where the evidence is conflicting and especially where the credibility of witnesses is involved, as is the case here, it is well established that this court will not disturb the findings of fact by a trial justice unless clearly wrong. From our examination of all the evidence in the record before us, we cannot say that the trial justice was clearly wrong in finding that, in March 1923, Margaret gave Mary, in consideration of similar action by the latter as to her account, a present so-called joint interest in account 4597 and that the moneys in that account now belong to Mary in her own and sole right.

Complainants' second ground of error concerns the payment by the bank to Mary of the sum of $101.88 in account 57,622, which stood in the name of Margaret alone. We recall that Margaret died on December 9, 1940. The payment in question was made to Mary on December 16, 1940, before the appointment of an administrator, in accordance with the bank's custom of paying small accounts standing solely in the name of a depositor, who died intestate, to his or her next of kin for the purpose of assisting in defraying the funeral expenses for the deceased depositor, when the undertaker's bill was greater than the amount of the deposit. The complainants contend that the trial justice erred in approving such action by the bank, as it violated the provisions of our probate statute.

The real complaining party against the bank's action is Delia Tormey, but she was not herself aggrieved thereby nor entitled to complain. The administrator alone was the proper party to complain in this regard. But he was not a party complainant in the original bill, nor did he appear as a witness at the trial in the superior court. There is nothing in the evidence before us even tending to show that the administrator, as such, complains of the bank's action, or that the sum of $101.88, or any part thereof, was diverted by Mary to a use othen than the one for which it was made. As a matter of fact, the evidence is undisputed that Mary added

$524.62 of her own money to that sum and paid the undertaker for Margaret's funeral. There is no claim that the bill was unreasonable and, under the statute, it is a preferred claim. Furthermore, since, according to the evidence, the sum of $101.88 constituted Margaret's entire estate and was less than the funeral bill, the rights of no creditor, and apparently there was none, can possibly be affected by the manner in which that sum was used by the bank and Mary to pay the undertaker's bill.

This is not an action at law, but a cause in equity, where one who seeks equity must do equity. To sustain the complainants' contention in the peculiar circumstances of this cause would result in unjust enrichment and useless litigation. We therefore find the contention without merit on the record before us.

The complainants' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Maurice L. Dannin, Aram A. Arabian,* for complainants.

*Burdick, Corcoran & Peckham, Edward J. Corcoran,* for respondent Mary Ellen Cassidy and The Savings Bank of Newport.