J. G. MELSON, Appellant, v. A. S. ORMSBY, Appellee.

**COVENANTS:** Deeds—Building Restrictions—Strict Enforcement—
1   Substantial Performance—Discretion of Court.   He who inserts
restrictive building covenants in his deed must bear in mind that,
while equity will enjoin a violation in a proper case, (a) the
exercise of such power, where strict enforcement is demanded,
lies within the sound discretion of the court, (b) the court will
look beyond the literal terms of the deed for the real object of the
parties, (c) will consider for whose benefit such restrictions were
inserted in the deed, (d) will consider whether the original object
has been practically or wholly abandoned, and if not, whether a
substantial performance will not effectuate the object as well as
the proverbial "pound of flesh." He must expect the restrictive
terms to be most strongly construed against himself. Loose and
incomplete terms will not give him his strict enforcement. Finally,
he will not be favored with strict enforcement unless it is neces-
sary, to effect the real purposes of the parties.

PRINCIPLE APPLIED:   Plaintiff sold a lot to defendant, the
deed providing that "the top of the first floor of the building
should not be more than four feet above the established grade
line of the sidewalk." No sidewalk had been built or grade line
established at this time, except for a short stretch of five feet.
Later, the sidewalk was completed at grade. Still later, defend-
ant started to build his house. Work of a permanent nature was
done. The basement was fitted with a hot water heating plant,
connected with divers parts of the house. The lot in question
slanted to the west—the topography was not uniform. In some
places the first floor was much less than four feet above the side-
walk; in other places considerably more than four feet. The
average elevation was less than four feet. Plaintiff had sold
several other lots adjoining or near to defendant's lot with sub-
stantially the same restrictions, and such owners had violated the
restrictions as to height of first floor. They made no complaint
of defendant's technical violation and apparently plaintiff did
not, though he denied consenting thereto. Some of these violators
built their houses after the deed to defendant. The deed con-
tained no provision fixing the point of measurement. *Held* that
plaintiff had practically abandoned his scheme, defendant had at
least substantially complied with the restrictions, and plaintiff's
demand for strict performance should be refused.

**TRIAL:  Equity Cause—Court Viewing Premises—Applying Evidence.**
2   Error cannot be predicated on the fact that in the trial of an
equity cause the court, by consent of both parties, viewed the
premises, it not appearing that the court in such viewing of the
premises did more than apply the evidence.

*Appeal from Cerro Gordo District Court.*—HON. M. F.
EDWARDS, Judge.

WEDNESDAY, MARCH 17, 1915.

PROCEEDINGS by way of injunction to restrain defendant
from erecting a house in excess of a limitation in height fixed
in his deed, the covenant in the deed providing that the first
floor of the house shall not be more than four feet above the
established grade line of the sidewalk. Decree from the de-
fendant, dismissing plaintiff's petition. *Affirmed.*

*Senneff, Bliss & Witwer,* for appellant.

*F. A. Ontjes,* for appellee.

GAYNOR, J.—This is an action in equity to restrain the
defendant from constructing a dwelling house on Lot 12, in
Block 2, River Heights, Mason City, Iowa, in violation of the
conditions and restrictions contained in a certain deed made
by the plaintiff to the defendant, on the 28th day of April,
1911. This is the restriction: ''The top of the first floor of
the building must not be more than four feet above the estab-
lished grade line of the sidewalk.''

Plaintiff asks that defendant be required to so alter or
change the construction of his dwelling house that the same,
when completed, shall conform to this condition and restric-
tion.

The plaintiff, as a basis for this prayer, alleges that on
the 28th day of April, 1911, he conveyed said Lot 12 to the
defendant, under a proper instrument of conveyance; that
the instrument of conveyance or deed contained the above
restriction; that the lot conveyed faces on River Heights

Boulevard; that on this street, there are other lots occupied by others and held under deeds containing similar conditions and restrictions; that the other owners purchasing from this plaintiff have complied with the restrictions; that the plaintiff is now constructing a residence on the land immediately across the street from this Lot 12, so purchased by him from the plaintiff.

During the month of June, 1912, and after this conveyance of Lot 12 to defendant, there was constructed on River Heights Boulevard, in front of this Lot 12, a permanent sidewalk, laid on the grade given and fixed by the city engineer. On the 25th day of September, 1912, the city of Mason City passed an ordinance fixing a permanent grade line for sidewalks, practically at the place at which the sidewalk was built. After said sidewalk was put in, but before the ordinance was passed, fixing a permanent grade line for sidewalks at this point, the defendant began the erection and construction of a dwelling house on his lot facing River Heights Boulevard, with the front line of the dwelling house twenty-four feet from the inner line of the sidewalk, and the first floor at an elevation exceeding four feet above the grade line of the walk fixed as aforesaid; that this was a violation of the conditions of the deed.

Defendant's answer is practically a general denial, except that he admits the execution of the deed with the condition or restriction therein contained.

We attach hereto a plat of that portion of the property in controversy, which shows the location of Lot 12 now in dispute, the streets abutting thereon, and the location of the house.

So far as the controversy here is involved, there is no dispute in the facts, or practically none.

The house faces on River Heights Boulevard. With reference to the points of the compass, the house faces northwest. In speaking of it hereafter, we will speak of it as if facing north, with the rear end to the south. The northeast

corner of the lot is 5 ft. 7½ in. above the sidewalk as laid. The northwest corner of the lot is 2 ft. 11 in. above the sidewalk, showing that the lot slopes to the west and showing that there is a difference in elevation of 2 ft. 8 in. between the northeast corner and the northwest corner of the lot. At a point opposite the northeast corner of the house, in a straight line to the sidewalk, the elevation above the sidewalk is 5 ft.

4½ in. A point opposite the northwest corner of the house in a straight line with the sidewalk is 4 ft. 3½ in., showing a difference in elevation between the northeast corner of the house and the northwest corner of the house of 1 ft. 1 in. There is a difference in elevation between the northwest corner and the southwest corner of the lot of 1 ft. ½ in.

In speaking of these elevations, we have reference to the first floor of the house. The house was constructed about five or six feet from the east line. That would be the west line of

Lot 13. The difference between the elevation of the floor of the house and that of the average grade of the sidewalk around Lot 12 is 3 ft. 5 in. The top of the first floor is approximately two feet higher than the top of the sidewalk, five feet north of the southwest corner of Lot 12. The floor of the house is approximately 4 ft. 11 in. above a point on the sidewalk on a line drawn directly through the middle of the house.

At the time defendant purchased this lot there was no sidewalk in front of it. There was, however, a sidewalk on the east side of what is shown on the plat as Park Place Street up to Lot 12, and extending about five feet over in front of Lot 12. This sidewalk was then at grade. The floor of the house is 1 ft. 11 in. above this five feet of sidewalk at the southwest corner of Lot 12.

The sidewalk in front of Lot 12 was built about the 18th day of June, 1912. The city engineer gave the builder of the sidewalk the grades at all points, and it was practically constructed at the grades fixed by him. This Lot 12 faces both on River Heights Boulevard and on Park Place Street. It has fifty-three and one-half feet frontage on the boulevard and fifty feet frontage on Park Place Street. The square in the plat, herein set out, represents the position of the foundation of the house,—that is, the main part of the house without the porches.

The house in question was built for the defendant by one Steinberg. The construction of the house was started the latter part of July. The carpenter work was started about the 12th of August. The basement of the house is about 7 ft. 2 in. below the joists of the first floor. There is a hot water heating plant in the building. The pipes pass from the furnace leading to different parts of the house. The boiler is located near the center of the building in the basement. The pipes come out of the top of the boiler and run across under the floor within a few inches of the joists. These are four-inch pipes.

Steinberg testified that he commenced the carpenter work

on the house on the 12th day of August. On the 17th of August, he stopped work because there was notice served that there would be an injunction asking a change in the height of the foundation of the house. He started work again on the 28th day of August. Work of a permanent nature, such as might interfere with the lowering of the house, was started about October 10th.

The first proposition relied upon by the plaintiff involves the right to maintain an action of this sort in equity. Of this, there can be no serious controversy. As said by the Massachusetts court in *Codman v. Bradley*, 87 N. E. 593, in speaking of a condition similar to the one here under consideration: "It created a right enforcible in equity against all persons taking with notice of it, actual or constructive, and this equitable right is in the nature of an easement, even if it rests on no broader principle than that equity will enforce a proper contract concerning land, against all persons taking with notice of it."

1. COVENANTS: deeds: building restrictions: strict enforcement: substantial performance: discretion of court.

In Pomeroy Equity Jurisprudence, Vol. 4, 3d Ed., at Sec. 1341, we find the following: "An injunction restraining the breach of a contract is a negative specific enforcement of that contract. . . . Where the agreement stipulates that certain acts shall not be done, an injunction preventing the commission of those acts is evidently the only mode of enforcement. . . . A clearer notion of the doctrine will perhaps be obtained by considering the contracts to which it applies, in three main classes", among which we find cited those restrictive covenants which create equitable easements.

In Sec. 1342 of the same work, the author says: "The injunction in this class of cases is granted almost as a matter of course upon a breach of the covenant. The amount of the damages, and even the fact that the plaintiff has sustained any pecuniary damage, are wholly immaterial. In the words of one of the ablest of modern equity judges 'it is clearly established by authority that there is sufficient to justify the

court in interfering, if there has been a breach of the covenant. It is not for the court, but the plaintiffs, to estimate the amount of damages that arises from the injury inflicted upon them. The moment the court finds that there has been a breach of the covenant, that is an injury, and the court has no right to measure it, and no right to refuse to the plaintiff the specific performance of his contract, although his remedy is that which I have described', namely, an injunction.''

See also Devlin on Real Estate, Vol. 2, 3d Ed., Sec. 990-e, in which it is said: ''Frequently an owner of a tract of land who desires to cut it up into lots for building purposes, inserts in the deeds of sale building restrictions as a part of a general plan for the improvement of the whole tract. When uniform restrictions as to the purposes for which the lots may be used are inserted in the deeds, these provisions inure to the benefit of the several grantees. . . . It is, however, essential to ascertain the purpose of the grantor in the imposition of these restrictions. They may be made for his own personal benefit, or they may have been imposed for the benefit generally of purchasers of the lots; and the grantor's intention may be ascertained from his act and the circumstances.''

Supporting this, see *Wesley v. Sulzer* (Pa.), 73 Atlantic 338; *Watrous v. Allen* (Mich.), 24 N. W. 104; *Spilling v. Hutcheson* (Va.), 68 S. E. 250; *Hyman v. Tash* (N. J.), 71 Atlantic 742; *Ogontz L. & I. Co. v. Johnson* (Pa.), 31 Atlantic 1008; *Sharp v. Ropes,* 110 Mass. 381, 385; *Swan v. B. C. R. & N. Ry.,* 72 Iowa 650; *Parker v. Nightingale,* 6 Allen (Mass.) 341, 83 Am. D. 632.

In construing conditions or restrictions in a deed, such as are here under consideration, it is important to determine the intention of the parties in making the restrictions, and the object and purpose to be attained by their enforcement. Courts of equity, in enforcing restrictions of this sort, will look to the purpose intended to be accomplished by the enforcement, as the same appears to have been in the minds of the parties

at the time of the making of the restriction. It might, and often does happen, that a restriction of this character, though properly made and ordinarily entitled to recognition and enforcement in a court of equity, if enforced, accomplishes only the fulfilment of an idle dream entertained at the time, but subsequently abandoned; that its enforcement at the time of the commencement of the suit would not aid in the carrying out of any purpose or scheme entertained at the time of its making. The scheme to be accomplished, by the enforcement of the provisions, may have been abandoned, or it may be that the enforcement of the provisions would not tend to the accomplishment of the scheme or purpose originally entertained. It may be that an exact adherence to the strict requirements of the condition or restriction is not necessary to the accomplishment of the scheme or purpose to effectuate which the provision was inserted. Equity looks not to the exact letter of the contract, but to the spirit and purpose of it, and it may be that a substantial compliance with the conditions or restrictions makes effectual the purpose and scheme originally entertained. Where a strict performance of the conditions is sought, the language of the restriction should be such as to enable the court to say that a strict performance was intended.

And further, before a strict literal performance of the restriction will be exacted by a court of equity, it must affirmatively appear that this is necessary to effectuate the purpose, scheme, or intent of the parties in making the restriction, and where the purpose and intent of the parties is made effectual by a substantial compliance with the restriction, such a compliance will satisfy the requirements of those rules of equity upon which the right to enforce compliance is based. Courts of equity will not strictly enforce, according to the letter, mere naked legal rights against a party who has substantially performed the conditions, and, in so doing, has made effectual the scheme and purpose and intent to be accomplished through the instrumentality of the restrictions and conditions.

Therefore, courts of equity have recognized the necessity of looking beyond the mere printed restriction, to the parties themselves; the subject-matter of the restriction; the conditions, as they exist, surrounding the subject-matter of the restriction; the topography of the country surrounding the place affected by the restriction; the scheme and purpose to accomplish which the restriction was made; and this, in order to ascertain the intent of the parties in respect to the property conveyed.

We therefore turn to the record in this case, with these rules in mind, to ascertain what the situation was at the time of the making of this deed, and at the time plaintiff sought to enforce this restrictive provision.

We find that at the time this deed was made, a sidewalk grade line had not been established on the side of this property abutting on River Heights Boulevard, nor, so far as this property is concerned, upon the west side abutting on Park Place Street. It does appear, however, that a grade line had been established and a permanent sidewalk put in on Park Place Street in front of Lots 8 and 9, and extending north over in front of Lot 12, a distance of about five feet.

It appears that the floor of this house, at the southwest corner of Lot 12, was but 1 ft. 11 in. above the sidewalk at that point; that at the northwest corner of Lot 12, the floor of the building was but 2 ft. 11½ in. above the sidewalk; that at the northeast corner it was 5 ft. 7½ in. above the sidewalk; that the floor of the house was above the sidewalk, at the northwest corner of the house, 4 ft. 3½ in.; that the floor of the house was above the sidewalk at the northeast corner of the house 5 ft. 4½ in. Proceeding eastward upon the street running in front of the house, up to and in front of Lot 13, we find a building constructed, the deed containing substantially the same provision as this, and there we find the first floor of the building 5 ft. 3¾ in. higher than the grade opposite the front door of the house. Proceeding southward in front of Lot 9, we find a building constructed with substan-

tially the same restrictions, with the first floor of the house 3 ft. 5 in. higher than the sidewalk opposite. We find a house also on Lot 12, in Block 1, with the top floor 6 ft. above the sidewalk in front. In the next house to that, the first floor is 4 ft. 7½ in. above the sidewalk opposite. In the next house west, the first floor is 4 ft. 6 in. above the sidewalk opposite. In the next house west, the first floor is 5 ft. 10 in. above the sidewalk opposite. · In the next house west, the first floor is 5 ft. 1 in. above the sidewalk opposite. These houses are built on River Heights Boulevard and west of Park Place, and on the south side of River Heights Boulevard, facing to the west.

The first house, above mentioned, is on the corner of River Heights Boulevard and Park Place Street, and directly opposite the defendant's house. The height of these houses was known to the plaintiff at the time he made his deed to the defendant, and he knew approximately the elevation of the floors of these houses. It appears that the elevation, at the time this trial was had, was the same as at the time the deed was made. It is true that the plaintiff denies that he consented to the erection of these buildings above the floor line required in the deed, but it appears that they are there, and they either do or do not offend the eye. They either do or do not destroy the beauty and symmetry and attractiveness contemplated by the plaintiff's scheme. It does not appear that any effort has been made on his part to compel these parties to comply with the requirements of the deed in this respect. It is also true that he claims that some of the buildings are so constructed that the eye could not observe the location of the floor. This, however, might become apparent from the location of the porches and the steps approaching. It would seem that the plaintiff had abandoned any thought of beautifying the residence district through this method, and if so, the sole accomplishment of his purpose is to find full fruition in compelling this defendant to strictly comply with the restriction. Some of the houses, heretofore referred to,

with excessive elevation, have been constructed since the making of this deed.

The purpose of requiring this restriction in deeds is set out by the plaintiff in his petition in which he says that he was the owner of certain land and caused the same to be duly platted as an addition to the city of Mason City, and known as River Heights; that since said platting, and for the purpose of making and keeping said addition an attractive and beautiful residence district, he inserted in all conveyances of lots in said addition, the same conditions and restrictions substantially as contained in this deed.

It is apparent, therefore, that the plaintiff, in neglecting to insist upon a strict compliance with the conditions of the deeds, has abandoned his original intention to beautify and make attractive, by this method; has abandoned his general scheme adopted for this purpose. It is apparent from the general situation there—the elevations and depressions—a strict compliance with the condition would not be effectual to accomplish the purpose intended.

In construing conditions of this character, they are to be most strongly construed against the party seeking to exact their performance, and if any doubt exists as to the manner of the performance, if the instrument leaves it in doubt, as to the points from which the measurements are to be made, the restriction shall be construed most favorably to the one against whom it is to be enforced. The object of the restriction contained in the deed evidently was to keep dwelling houses erected on this lot, when completed, in harmony with the other dwellings on the street; not to mar and injuriously affect the beauty of the street for residential purposes.

At the time this contract was made, there was an established grade line for sidewalks on Park Place Street, and a portion of a permanent sidewalk laid in front of this lot on the west. The provision of the deed is "The top of the first floor of the building must not be more than four feet above the established grade of the sidewalk." There is no provision

in the deed fixing the points of measurement immediately in front of the house. If you take a point directly in front of the house on the north on River Heights Boulevard, the floor is more than four feet above the sidewalk. Take it in front of the house on Park Place Street, it is less than four feet. Taking the average height of the sidewalk on the north and west sides of the lot, the floor is less than four feet above the sidewalk. If there is any doubt as to the point from which the measurement should be taken, that doubt must be resolved in favor of the defendant. See *Van Duyn v. Chase & Co.,* 149 Iowa 222; *Johnson v. Robertson,* 156 Iowa 64.

Again, it has been the holding of this court that specific performance of a building restriction covenant rests largely in the sound discretion of the court, and relief will be denied if the defendant will be subjected to greater hardship or the consequences would be inequitable, but pecuniary loss to defendant will not itself alone prevent enforcement.

The covenant evidently was not made for the sole benefit of the plaintiff in this case. It was made for the benefit of those who purchased lots from the plaintiff upon these streets. These purchasers have not complied with the restrictions in their deeds. They are not in a position to complain of the defendant, nor are they complaining. Nor have they urged any objections to the manner in which defendant constructed his house. The plaintiff cannot complain because the dream of beauty and attractiveness that moved him to act and to insert these conditions in the deed has not been realized, when it is apparent that he is now not interested in the realization. But, even if we should concede that he may now insist on enforcing against this defendant a claim resting upon a breach of this covenant, we do not think, from this record, that the complaint rests upon a substantial foundation. Taking into consideration the elevation at which these other houses were constructed, the sloping grade line of the lot on each side of this Lot 12, we do think that a strict enforcement of the restriction would not tend to fulfill this dream

of beauty more substantially than it is now fulfilled under present conditions. It would require a critical eye and a careful study of the situation, in view of these facts,—in fact, it would almost require a measurement by rule,—to ascertain that at any particular point, the floor of this house had an elevation greater than is required by the restriction. We think that there is a substantial compliance with the restriction in the deed, and that plaintiff has no equitable ground of complaint. We agree with the ruling of the learned District Court in the disposition he made of this case.

There is another point urged for reversal, to wit, that the court inspected the *locus in quo* before he rendered his decision, and it is claimed that he took into consideration what he observed in arriving at his final conclusion. This point is not argued, but we have examined the record and find that the view was taken by consent of both parties, and we do not find that the court used any fact obtained by his observation in determining the case, but rather used it as an aid to a better understanding of the situation as developed in the record.

2. TRIAL: equity cause: court viewing premises: applying evidence.

Upon the whole record, we find that this case ought to be and is *Affirmed.*

DEEMER, C. J., LADD and SALINGER, JJ., concur