ROSS E. GRANGE et al., appellees, v. CARLTON J. KORFF et ux., appellants; JOHN MCGOWAN et ux., intervenors-appellees; COUNTY OF LINN et al., third-party defendants-appellees.

No. 49090.

(Reported in 79 N.W.2d 743)

120

DECEMBER 11, 1956.

Fahey & Cimprich and L. D. Dennis, all of Cedar Rapids, for appellants.

Adam A. Kreuter and George C. Claassen, both of Cedar Rapids, for appellees.

Holmes & Holmes, of Cedar Rapids, for intervenors-appellees.

Willis A. Glassgow and Bryce M. Fisher, both of Cedar Rapids, for third-party defendants-appellees.

GARFIELD, J.—This is a suit in equity to enjoin defendants from constructing and operating an auto trailer court in a suburban residential area outside the city of Cedar Rapids as in violation of building restrictions of which defendants had notice. Following trial a decree granted plaintiffs and intervenors the relief sought. Defendants appeal.

The area consists of thirty-one numbered lots and is designated Auditor's Plat 120, Linn County, commonly referred to as Lincoln Heights. It is about five miles east of the center of the Cedar Rapids business district. Defendants Carlton J. Korff and wife purchased Lot 31 for $6000 by contract dated July 14, 1950. The deed to them was made a month later. Lot 31 is in the northwest corner of the plat, contains 8.2 acres, and has a dwelling house on it. The other lots vary in size but are much smaller than 31, although considerably larger than the average city lot. After defendants acquired their lot they did grading, built a road and otherwise improved the land as a site for an auto trailer court they planned to operate from their dwelling.

Plaintiffs are twenty-one owners of most of the other lots in the plat. Intervenors John McGowan (also a plaintiff) and wife own Lot 30 adjoining defendants' Lot 31 on the east. Plaintiff Grange started the suit in July 1952. Amended petition was filed on behalf of all plaintiffs in February 1953. Lots in the plat comprise a strictly residential area. No business is con-

ducted there although one resident near the southeast corner raises a few dogs, apparently for sale, and has a small sign hanging from a post advertising his kennels.

In February 1920, Frank B. Lane, a real-estate broker in Cedar Rapids, acquired title to the land in question. Lane was associated in the real-estate business with H. L. Nehls with whom he officed. They owned and controlled a corporation known as Nehls-Lane Co. Nehls controlled another corporation known as H. L. Nehls Investment Co. Nehls & Lane laid out streets, built a few houses and did some other work on the land. Auditor's Plat No. 120 was filed for record September 13, 1921.

The Cedar Rapids Gazette, a daily paper, for September 23, 1921, carried an advertisement, more than a half page in size, describing claimed advantages of "Lincoln Heights, Cedar Rapids' beautiful new suburban homesites" and stating the lots would go on sale the following day. Also that "improvements must conform to the standard of desirable, attractive homes." The ad bore the name and address of Nehls-Lane Company as sponsor.

Defendants call attention to the statement in this ad that Lincoln Heights "comprises 30 tracts." From this they argue it was not intended that building restrictions, hereinafter referred to, should apply to defendants' Lot 31. We are not inclined to attach much importance to this statement. The ad contained a large reproduction of the plat showing the thirty-one numbered lots and the printed matter stated they are as large as "25 city lots each." This could refer only to Lot 31. The ad clearly implied, if it did not expressly state, the entire plat was for homesites.

October 24, 1921, Frank B. Lane and wife deeded Lot 31 to Wm. McGowan and adjoining Lot 30 to intervenor John McGowan, son of William. In purchasing Lots 30 and 31 the two McGowans dealt with H. L. Nehls who told them the deeds to all lots would be restricted to a house and outbuildings. Each deed to the McGowans contained this provision:

"* * * it being the intention of the owners of said lot of Plat No. 120 * * * that said lot shall be used only for private residence purposes. This conveyance is made under the restrictions and agreements which are a part of the consideration hereof and are hereby expressly agreed to bind the grantee herein for himself,

his heirs, legal representatives, assigns, and grantees as covenants running with the land as follows: That no building other than a private dwelling house which shall cost not less than $2,000.00 and the necessary barn, stable and outhouses appurtenant thereto shall ever be erected or maintained upon said lot nor shall any building be erected or maintained within twenty feet from the front line of said property. It is also agreed that the foregoing covenants are for the benefit of the present owners and each and all of the several future owners and such owner, or owners, may at any time maintain a suit, or suits, in equity for the specific performance of any or all, of the said covenants and to restrain a violation thereof."

November 12, 1921, Frank B. Lane and wife deeded Lot 14 to A. L. Peet. The deed contained substantially the same provision, quoted above, as the McGowan deeds except that the dwelling house must cost not less than $2500, instead of $2000, and the building line was fixed at 25, rather than 20, feet from the front of the lot. Lot 14 faces the southwest boundary of the plat, on a different road from that along Lot 31. Before deeding Lot 14 to Peet, Lane had contracted to sell it to Florence Risley but the contract was never performed. It contained no building restrictions.

December 19, 1921, Lane and wife conveyed Lots 26 and 27 to James E. Patterson and wife and deeded to Nehls-Lane Company all thirty-one lots except Nos. 14, 26, 27, 30 and 31 which, as stated, had been conveyed to others. The two deeds to the Pattersons and the one to Nehls-Lane contained no restrictions. Before the end of 1923 Nehls-Lane Company or its grantee, Nehls or Lane, conveyed fourteen lots by deeds containing substantially the restrictions heretofore quoted from the deeds to the McGowans of Lots 30 and 31 except that these later deeds provide: "It being the intention of the owners of said Auditor's Plat 120 that all of said Auditor's Plat shall be used only for private residence purposes."

The McGowan deeds state the lot thereby conveyed, rather than all the plat, shall be used only for private residence purposes. Two other lots were deeded by Nehls, grantee from Nehls-Lane Co., in September 1923, subject to the restrictions found in the deeds to the McGowans and Peet. Thus nineteen of the

thirty-one lots were conveyed by Lane, Nehls or their corporation subject to one or the other of these two sets of restrictions.

Lot 25, like 26 and 27, was deeded without restrictions although they have been used for residence purposes. The remaining nine lots were conveyed between 1925 and 1928 "subject to reservations and building restrictions of record." Grantor in these deeds was H. L. Nehls Investment Co. which had acquired them from or through Nehls-Lane Company. All the deeds we have referred to were duly recorded.

I. The first proposition defendants-appellants argue is that the thirty-one lots were never sold under any general building scheme of which they had knowledge but were indiscriminately sold by Lane and Nehls with or without restrictions.

We will pass for now the question of defendants' knowledge or notice to them of the restrictions. There is no doubt Lane deeded Lot 31 which defendants now own to William McGowan subject to the provision "said lot shall be used only for private residence purposes" and to the other restrictions above quoted. We are agreed the use defendants propose to make of it, operation of a trailer court, is a commercial one, in violation of the restriction. Thodos v. Shirk, 248 Iowa 172, 79 N.W.2d 733; City of New Orleans v. Lafon, La. App., 61 So.2d 270, 274; Cantieny v. Boze, 209 Minn. 407, 296 N.W. 491, 493, 173 A.L.R. 321, 323; Deitrick v. Leadbetter, 175 Va. 170, 8 S.E.2d 276, 127 A.L.R. 849, 852. See also Huff v. City of Des Moines, 244 Iowa 89, 97, 56 N.W.2d 54, 58.

The vital question is whether plaintiffs or intervenors are in position to enforce the restrictions in the deed to William McGowan. It is unimportant that the deed to defendants contains no restrictions provided they had notice of the restrictions in their chain of title. Thodos v. Shirk, supra; Hegna v. Peters, 199 Iowa 259, 261–265, 201 N.W. 803; Burgess v. Magarian, 214 Iowa 694, 697, 243 N.W. 356.

Plaintiffs and intervenors may enforce these restrictions if they were intended to benefit the other lots in the plat and not merely the grantor personally. The ultimate question therefore is what was the intention of the parties to the William McGowan deed. 14 Am. Jur., Covenants, Conditions and Restrictions, sections 311, 319; 26 C.J.S., Deeds, section 167(1), page 1141.

This question of intention is to be determined not only from the terms of the deed but also from the situation of the parties and the surrounding circumstances. Thodos v. Shirk, supra, 248 Iowa 172, 180, 79 N.W.2d 733, 738; Johnson v. Robertson, 156 Iowa 64, 74, 76, 135 N.W. 585, Ann. Cas. 1915B 137; annotation 21 A.L.R. 1281; 26 C.J.S., Deeds, section 167(1), page 1141. See also Melson v. Ormsby, 169 Iowa 522, 528, 151 N.W. 817.

The most familiar cases which uphold the right of land-owners to enforce restrictive covenants to which they are not parties are those in which a general scheme or plan for developing a tract has been adopted, designed to make it more attractive for residence purposes by reason of restrictions to be imposed on each lot sold. Generally where there is such a plan or scheme the owner of one lot may enforce such a covenant against the owner of another lot.

Decisions of this kind are so numerous that extensive citation is unnecessary. Many are cited in annotations 21 A.L.R. 1281, 1306-7; 33 A.L.R. 676, 677; 60 A.L.R. 1223, 1228; 89 A.L.R. 812, 815. See also 26 C.J.S., Deeds, section 167(2); 14 Am. Jur., Covenants, Conditions and Restrictions, section 319. Our own precedents of this type include Thodos v. Shirk, 248 Iowa 172, 79 N.W.2d 733, Hegna v. Peters, 199 Iowa 259, 266, 201 N.W. 803, and Johnson v. Robertson, 156 Iowa 64, 76, 135 N.W. 585, Ann. Cas. 1915B 137, all supra.

It has been pointed out that where building restrictions are imposed by a common grantor for the benefit of all the lots in a subdivision it is not necessary that there be any uniform plan for its development in order to render the restrictions enforceable at the suit of a lot owner otherwise interested in their enforcement. Accordingly the question of uniform plan is only material to an inquiry whether the person who was the source of title intended to subject one parcel of land to a restriction for the benefit of another part of the original whole. Osius v. Barton, 109 Fla. 556, 147 So. 862, 88 A.L.R. 394, 401; Humphreys v. Ibach, 110 N.J.Eq. 647, 160 A. 531, 85 A.L.R. 980, 982–984; Ball v. Milliken, 31 R.I. 36, 48, 76 A. 789, 37 L.R.A., N.S., 623, Ann. Cas. 1912B 30, 35.

It follows from what we have said that nonexistence of a general plan or scheme, if such were the fact, would not necessarily warrant a reversal, while existence of such a plan or scheme, if it does exist, is an indication plaintiffs and intervenors may enforce the restrictions in defendants' chain of title.

Much of defendants' argument at this point is based on the omission of restrictions in the deed from Lane to Nehls-Lane Company, made in December 1921, of twenty-six of the thirty-one lots. Defendants look upon Lane as sole developer of the subdivision and regard this omission from the deed as indicating he had no general plan for its development. We think this does not truly reflect the situation.

Both Lane and Nehls must be regarded as the original developers of this tract. They appear to have been jointly interested in it as purchasers, in improving it and disposing of the lots. It is fair to infer the legal title was in Lane's name in the first instance for convenience and that the conveyance to the corporation and some other transfers between Lane, Nehls, Nehls-Lane Company or H. L. Nehls Investment Company were likewise for convenience. Absence of restrictions from deeds evidencing these transfers does not, under the circumstances here, negative the existence of a general scheme or plan. Scheuer v. Britt, 217 Ala. 196, 115 So. 237; idem, 218 Ala. 270, 118 So. 658, 659.

That deeds to the first purchasers of three of the lots contained no restrictions does not defeat those in conveyances of the others if, as we find, the general plan has been maintained from its inception. If such plan has been understood, accepted, relied and acted upon by all in interest it is binding and enforceable on all purchasers with notice. Hegna v. Peters, supra, 199 Iowa 259, 265, 201 N.W. 803; Scheuer v. Britt, supra, 217 Ala. 196, 115 So. 237; idem, 218 Ala. 270, 118 So. 658, 659; Miles v. Hollingsworth, 44 Cal. App. 539, 187 P. 167, 172; Allen v. City of Detroit, 167 Mich. 464, 133 N.W. 317, 319, 36 L.R.A., N.S., 890; Northwest Civic Assn. v. Sheldon, 317 Mich. 416, 27 N.W.2d 36, 39, 4 A.L.R.2d 1359, 1362, and annotation 1364; 14 Am. Jur., Covenants, Conditions and Restrictions, section 200; 26 C.J.S., Deeds, section 167(2)b, page 1149.

The principle underlying these decisions is thus stated in annotation 4 A.L.R.2d 1364, 1366: "The principle is that where an owner of land contracts with the purchasers of successive parcels in respect to the manner of the occupation and improvement of such parcels, he thereby affects the remainder of the land with an equity which requires it also to be occupied and improved in conformity to the general plan, and this equity is binding upon a subsequent purchaser of the remaining parcel who has notice of the prior agreement, though his legal title is unrestricted."

In order to prove the existence of a general plan it is not necessary that the restrictions be exactly the same in all the deeds so long as the scheme of creating a uniform subdivision is apparent. Thodos v. Shirk, supra, 248 Iowa 172, 181, 79 N.W.2d 733, 738, and citations; Miles v. Hollingsworth, supra, 44 Cal. App. 539, 187 P. 167, 172; Snow v. Van Dam, 291 Mass. 477, 197 N.E. 224, 226; Velie v. Richardson, 126 Minn. 334, 148 N.W. 286, 287, 288; Humphreys v. Ibach, supra, 110 N.J.Eq. 647, 160 A. 531, 85 A.L.R. 980, 984; 26 C.J.S., Deeds, section 167(2)b, pages 1149-50; 14 Am. Jur., Covenants, Conditions and Restrictions, sections 202, 319.

In addition to the restrictions in the various deeds the newspaper ad to which we have referred is evidence of the general plan to make this a restricted residential area and that this was publicly known. There is also the testimony as to the representations Nehls made to the McGowans when they were negotiating for the purchase of Lots 30 and 31, and the reliance placed thereon. Plaintiff Sanders was employed by Nehls and Lane to help improve this tract. He moved into the house where defendants now reside before the plat was filed. He says Nehls and Lane instructed him to inform prospective purchasers it was a restricted district, one house to a lot, and he followed these instructions. (Nehls and Lane were both dead at the time of trial.) As stated, the tract was improved by the erection of homes. Incidentally the county zoning commission zoned the area as a residential district. There is other testimony which points to the existence of a general plan or scheme for the various lots in this tract.

128

That the evidence to which we have just referred was admissible see Hegna v. Peters, supra, 199 Iowa 259, 201 N.W. 803. See also Thodos v. Shirk, supra, 248 Iowa 172, 79 N.W.2d 733; Rose v. Kenneseth Israel Congregation, 228 Minn. 240, 36 N.W.2d 791, 798; Humphreys v. Ibach, supra, 110 N.J.Eq. 647, 160 A. 531, 85 A.L.R. 980, 984. Hegna v. Peters, supra, holds evidence of the kind referred to is not rendered incompetent by the statute of frauds as defendants contend (page 266 of 199 Iowa, page 805 of 201 N.W.). See annotation 5 A.L.R.2d 1316, 1342-3.

II. It is clear defendants had at least constructive notice of the restrictions in the deed to Lot 31 from Lane to William McGowan. As we have intimated, the record of that deed imparted constructive notice to defendants. Thodos v. Shirk, and Hegna v. Peters, both supra; Arlt v. King, 328 Mich. 645, 44 N.W.2d 195, 196; King v. St. Louis Union Trust Co., 226 Mo. 351, 126 S.W. 415; annotation 4 A.L.R.2d 1364, 1372; 26 C.J.S., Deeds, section 167(5), page 1159; 14 Am. Jur., Covenants, Conditions and Restrictions, section 331.

Further, defendants looked over the tract twice before they purchased their lot and observed it was improved with homes and no business was conducted there. The general appearance and character of the tract and the nature of the improvements thereon should have indicated to them the presence of some character of building restrictions. Hegna v. Peters, supra, and citations, at page 263 of 199 Iowa, page 804 of 201 N.W.; Sanborn v. McLean, 233 Mich. 227, 206 N.W. 496, 60 A.L.R. 1212, 1215; annotation 4 A.L.R.2d 1364, 1371; 14 Am. Jur., Covenants, Conditions and Restrictions, section 329.

Still further, defendants' contract of purchase recites the property is "subject to covenants and building restrictions of record." The letter of the attorney who examined the abstract of title to the lot states: "Notice should be taken of the restrictions in the deed at entry 132"—the deed from Lane to William McGowan. The letter is addressed to the association from which defendants were negotiating a loan and also to defendants. It is dated eighteen days prior to the date of the deed to defendants.

III. We will consider next (out of order) the third

proposition defendants argue—that drastic changes have occurred in the platted area which make it unreasonable and inequitable to enforce these building restrictions against defendants. It is claimed "many of these changes" have been caused by plaintiffs and intervenors and their predecessors in title and constitute violations of the restrictions. The argument is without merit.

The proposition is mainly based upon these facts. Several plaintiffs outlet sewage from their homes into septic tanks. There is no general sewer in the tract. Some of the tanks in turn outlet along highways and some of this filtered sewage passes along the road adjoining defendants' premises and onto the lot itself. At times an odor of sewage comes from these outlets. This condition was less prevalent at the time of trial than had formerly existed. There is a garbage dump on an abandoned electric railroad right of way about 400 feet west of defendants' premises, outside the plat in question. Some plaintiffs have dumped garbage and refuse there, but not that Mr. Korff observed for some two months before the trial. Sometime between the time of platting and defendants' purchase of their property the railroad ceased to operate over this right of way which passed along the south side of Lot 31. It is claimed this abandonment rendered the lot and surrounding ground less desirable for residence purposes. (It would seem there would also be some benefits from abandonment of the railroad.) Complaint is also made of the raising of dogs by one lot owner and his sign to which we have already referred. Also that more than one house has been built on at least one lot.

Thodos v. Shirk, supra, 248 Iowa 172, 186, 187, 79 N.W.2d 733, 742, cites several decisions for the proposition that before a defense to such an action as this, based on changed conditions, may prevail there must be a change in the character of the neighborhood sufficient to make it impossible to secure in a substantial degree the benefits sought to be realized by the restrictions. Precedents are also referred to which hold the change must be such as to render the restriction valueless to owners of the benefited land and oppressive or unreasonable to the owner of the burdened land. See also Johnson v. Robertson, 156 Iowa 64, 83, 84, 135 N.W. 585, Ann. Cas. 1915B 137, Snow v. Van

130

Dam, 291 Mass. 477, 197 N.E. 224, 229, and Deitrick v. Lead-better, 175 Va. 170, 8 S.E.2d 276, 127 A.L.R. 849, 852, 853, all supra; 26 C.J.S., Deeds, section 169.

In Thodos v. Shirk the raising of dogs for sale and several other minor business activities were relied upon as showing an abandonment of building restrictions except for residences. We refer to these uses as clearly of a trivial, temporary and immaterial nature, insufficient to defeat the primary residential purpose of the restriction.

. We are agreed that none of the matters of which defendants complain, nor all of them combined, has resulted in any fundamental—or substantial—change in the character of this tract sufficient to constitute a defense to the suit.

IV. Defendants' remaining proposition is that the restrictions sought to be enforced are so unreasonable, harsh and inequitable a court of equity should not enforce them.

We find nothing unreasonable or inequitable in the restriction that Lot 31 shall be used only for private residence purposes or in the other restrictions in the deed from Lane to William McGowan except the provision that at least implies only one dwelling house shall be erected *on Lot 31*. While we are clear defendants are properly enjoined from constructing and operating a trailer court and from using their lot for other than private residence purposes, we are not persuaded it is an exercise of sound discretion, under all the circumstances, to enjoin the erection of more than one dwelling on this suburban lot of 8.2 acres. The trial court's decree seems to do so and in this one respect we are unable to agree with it.

It is not to be inferred from this, however, that the restriction of but one dwelling on a lot is unreasonable or unenforceable as to the other, smaller lots in the plat. As applied to Lot 31 we feel its enforcement will be of little benefit to plaintiffs and intervenors but will unnecessarily punish defendants, nor is it needed in order to effectuate the purpose of the restrictions.

Our disagreement with the trial court in this one respect is reached on what we regard as fundamental principles that govern actions of this kind. It is true mere pecuniary loss to a defendant from enforcement of such restrictions will not prevent a court of equity from enforcing them. But specific per-

formance of them is not a matter of absolute right. It rests largely in the sound discretion of the court and if a defendant will be subject to great hardship or the consequences would be inequitable, relief will be denied. Johnson v. Robertson, supra, 156 Iowa 64, 81, 135 N.W. 585, Ann. Cas. 1915B 137, and citations; Melson v. Ormsby, supra, 169 Iowa 522, 529, 533, 151 N.W. 817; 26 C.J.S., Deeds, section 171a, pages 1174-5; 14 Am. Jur., Covenants, Conditions and Restrictions, section 338.

Melson v. Ormsby, supra, makes this pertinent statement (page 529 of 169 Iowa, page 820 of 151 N.W.): "And further, before a strict literal performance of the restriction will be exacted by a court of equity, it must affirmatively appear that this is necessary to effectuate the purpose, scheme, or intent of the parties in making the restriction, * * *."

Except as modified in the respect stated in this division the decree is affirmed. One fourth the costs in this court to be taxed to plaintiffs, the rest to defendants.—Modified and affirmed.

THOMPSON, C. J., and BLISS, OLIVER, WENNERSTRUM, SMITH, LARSON, and PETERSON, JJ., concur.