**FIRST SECURITIES COMPANY, An Iowa Corporation, Appellant,**

v.

**Christine DAHL, Robert T. Nakamaru and Jeanne S. Nakamaru, Appellees.**

No. 95–1662.

Supreme Court of Iowa.

Feb. 19, 1997.

John T. Flynn of Brubaker, Flynn & Darland, P.C., Davenport, for appellant.

David A. Millage of Wells, Gallagher, Roeder & Millage, Bettendorf, for appellees.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

SNELL, Justice.

This appeal comes from First Securities Company, as plaintiff, which filed a declaratory judgment action, seeking to remove a restriction on its ownership of Lot 20, Crestview Heights, Fourth Addition to the City of Bettendorf, Scott County, Iowa. The trial court denied the relief requested. We affirm.

## I. Factual and Procedural Background

First Securities Company is an Iowa corporation. The company's present shareholders and directors include John Guenther, vice president and secretary, Jerome Guenther, president, and Judith Guenther, treasurer. Evelyn Guenther, now deceased, was a fifty percent shareholder until February 10, 1994, and secretary and director until September 7, 1993.

The company platted the subdivision known as Crestview Heights Fourth Addition to the City of Bettendorf, being a replat of Lot 16 and part of Lot 20 of Crestview Heights. The company owns the remaining portion of Lot 20, which is a buildable lot under city ordinances, and also owns Outlot A of Crestview Heights Fourth Addition. Outlot A was platted entirely out of Lot 20 and contains a two-acre lake and a dam. There is a platted fifteen-foot easement for access to Outlot A leading from a street and cul de sac serving Lots 21 and 22 of Crestview Heights. This easement connects to a platted "52–foot road and utility easement" crossing Outlot A. The dam creating the lake on Outlot A is of earthen character over which vehicular traffic would have to travel to access Lot 20.

Defendant Christine Dahl owns Lot 1 in Crestview Heights Fourth Addition and defendants Robert and Jeanne Nakamaru own Lot 2. Lots 1 and 2 were formerly Lot 16 of Crestview Heights.

In 1984, the Crestview Heights Homeowners Association filed an action against, among others, the company and Evelyn and John Guenther. As part of the settlement of this lawsuit, on October 24, 1984, Evelyn Guenther signed an affidavit as the company's secretary purporting to restrict use of the 52–foot easement for access to Lot 20. The affidavit provided that the company relinquished any right to improve Outlot A and

the outlot would continue to be used for recreational purposes by those living in the Crestview Heights subdivisions. The affidavit further stated, "Nor shall said lot be used as access to any other property, by First Securities Company or their heirs, successors and assigns." The affidavit was recorded on October 30, 1984.

Based on this affidavit, First Securities Company was able to settle the lawsuit and was relieved of paying any road assessment for Outlot A. Evelyn and John Guenther subsequently sold their interests in Lot 1 to Christine Dahl. The company subsequently became interested in selling Lot 20 for residential development. The company asked Dahl and Nakamaru to execute releases of any restriction to access to Lot 20 across Outlot A. They refused to do so.

The company then filed an application for declaratory judgment seeking a ruling that Evelyn Guenther's affidavit did not create a restrictive covenant preventing use of the easement across Outlot A, or, if it did, the restrictive covenant was void and unenforceable because (1) it fails to serve a valid purpose, (2) it violates public policy by creating a landlocked parcel, (3) it is contrary to the public's easement contained in the plat, and (4) it does not prevent the company from accessing Lot 20 across Outlot A so long as it owns both parcels.

Following a hearing, the district court entered its findings, conclusions and judgment. The court held Evelyn's affidavit is binding on the company to the extent the restriction inhibits the company's use of the road easement over Outlot A. The court concluded the restriction was imposed for the benefit of all owners in Crestview Heights and its Fourth Addition in exchange for relieving the company of its obligation to establish or maintain roadways. The court concluded there was no merger caused by the company's ownership of Lot 20 and Outlot A. It ruled that the sporadic use of the easement by others did not constitute abandonment of the restrictive covenant, there was no evidence of acquiescence, laches, or estoppel, and the lack of a time limitation was no bar to enforcement. The court also concluded there was no public policy violation because

the company and John and Evelyn Guenther sold lots after the recording of the affidavit and failed to retain a right of access over those lots. The court therefore denied the relief requested in the company's petition.

The company appeals. It contends that the district court erred in (1) ruling the affidavit restricted the company's access over the easement because it was intended only to prevent a person outside of Crestview Heights, who did not pay a road assessment, from crossing Outlot A, (2) failing to rule that the company was entitled to access based on a public policy against creating landlocked parcels, (3) allowing the conduct of the Guenthers in selling their property, without reserving an access, to be held against the company, (4) failing to find common use of the road easement for access to Lot 20 for recreational purposes amounted to an abandonment of the restriction, (5) failing to rule that none of the defendants has any rights arising out of the affidavit, (6) upholding the restriction in light of the extreme hardship to the company and the concomitant windfall for the defendants, (7) concluding Evelyn Guenther had any authority, express, implied, or apparent, to bind the company in matters affecting title to real estate, and (8) deciding the lack of a time limit in the restrictive covenant did not affect its enforceability.

## II. Scope of Review

This matter, having been tried in equity, is reviewed de novo. Iowa R.App.P. 4.

## III. Analysis

Judge James R. Havercamp tried this case in equity and made extensive findings of fact. In our review, we agree with the court's findings as stated in the decision.

Lot 20 has been used through the years by the residents of Crestview Heights and Crestview Heights Fourth Addition for recreational purposes. In doing so, the residents have traversed Outlot A over the dam on foot, on bike and with vehicles. It has, however, never been used as a road in the context of a street or vehicular access point in any common understanding of those words.

Jerome Guenther owned and his personal residence was located on what was to become Lot 2 of Replat of Outlot "A" and Lot 10, Guenthers 1st Addition; Plaintiff owned Lot 1 located immediately west of Lot 20 in Crestview Heights. Plaintiff bought Lot 16 on February 7, 1978 and Lot 20 on November 13, 1978 in Crestview Heights for the purpose of giving Jerome access to the lake and for subdividing into three lots; Lot 16 became Lots 1 and 2 of Crestview Heights Fourth Addition and from Lot 20, Outlot A containing the lake was carved out, leaving the balance of Lot 20 as a buildable lot. In the dedication to the platting of Crestview Heights Fourth Addition, a perpetual utility easement was granted as marked on the plat (including Outlot A) within which no permanent building or trees could be located and allowing gardening, shrubs or landscaping only within that area. Outlot A was set aside as a permanent open area with natural vegetation and water surface area, not to be developed with structures or buildings, which restriction would last to January 1, 2003 and for successive ten years thereafter; the City of Bettendorf could change the restriction by council ordinance action only.

On October 3, 1981, Plaintiff conveyed Lot 1, Crestview Heights Fourth Addition, to Evelyn M. and John E. Guenther, sister and brother, as joint tenants. On December 28, 1982, Plaintiff conveyed Lot 2, Crestview Heights Fourth Addition, to John T. Taylor and wife, subject to a driveway easement for Lot 1 over a north portion of Lot 2. On the same date, Plaintiff conveyed to John T. Taylor and wife a perpetual easement for recreational purposes only, in Outlot A in Crestview Heights Fourth Addition. On January 1, 1983, Jerome, Plaintiff's president, moved permanently to California; at that time the only real estate plaintiff owned in these subdivisions was Lot 20 in Crestview Heights and outlot A in Crestview Heights Fourth Addition. Jerome ultimately sold his residence and Lot 2, and on August 26, 1983, Plaintiff conveyed to Mark A. Bell Lot 1, both of replat of Outlot "A" & Lot 10, Guenthers 1st Addition. Plaintiff also granted to Mark A. Bell in an undated instrument an easement over Outlot A of Crestview Heights Fourth Addition for Bell's access to the lake for use of the lake.

On January 12, 1984, the Crestview Heights Homeowners Association filed a lawsuit in Scott County District Court against, among others, Plaintiff and John and Evelyn Guenther as owners of Lot 20 in Crestview Heights, Outlot A in Crestview Heights Fourth Addition and Lot 1 in Crestview Heights Fourth Addition; Plaintiffs sought declaratory judgment with respect to the rights and obligations of parties to repair and maintain roads in Crestview Heights and Crestview Heights Fourth Additions.

On October 30, 1984, Evelyn signed and October 30, 1984 recorded in the office of the Scott County Recorder, the Affidavit which is the nexus of this litigation, Plaintiff's Exhibit No. 5. It stated she was the Secretary of Plaintiff; that Plaintiff owned Outlot A in Crestview Heights Fourth Addition; she affirmed that said lot was an outlot and not buildable as such without specific approval of the City of Bettendorf. She also stated that the lake was located on Outlot A, and that area was not buildable. She stated Plaintiff relinquished any right to place any improvements on Outlot A and affirmed that said outlot would remain as such and be used for recreational purposes by those living in Crestview Heights subdivisions. She agreed that the affidavit would be recorded so that it would be record that no improvements could be erected on Outlot A and further stated, "nor shall said lot be used as access to any other property, by First Securities Company or their heirs, successors and assigns."

It was signed Evelyn M. Guenther; the acknowledgment of the notary public stated: "personally appeared EVELYN M. GUENTHER, Secretary of First Securities Company, to me personally known, who being by me duly sworn did say that she is the Secretary of said Corporation, that the corporation has no seal, and that said instrument was signed and sealed on behalf of said corporation by authority of

its Board of Directors, and that said Evelyn M. Guenther, Secretary, severally acknowledges the execution of said instrument to be the voluntary act and deed of said corporation, by it voluntarily executed."

On November 1, 1984, Plaintiff's attorney sent a letter to Evelyn stating that the affidavit she had supplied had been recorded, "in connection with the dismissal of the claim by the proposed road association against Outlot A. This means there will be no assessment."

Jerome Guenther testified the affidavit was given to "settle the lawsuit"; this was the only lawsuit pending at the time. On November 1, 1984, the homeowners' lawsuit proceeded to trial against other defendants, resulting in a judgment and order filed February 12, 1985 concerning rights of those parties and repair and maintenance of the roads in Crestview Heights and Crestview Heights Fourth Addition.

As a consequence of the settlement, Plaintiff was relieved from paying any road assessment for Outlot A, there being no paved road located thereon or contemplated to be located thereon. Plaintiff did, however, pay a $750 road assessment for Lot 20. No road was then or has been located on that lot; annual assessments for the last 10 years for road maintenance and repair have averaged between $200 and $900; none of these assessments have been paid by Plaintiff on behalf of Lot 20 or Outlot A.

On May 28, 1986, Dahl presented Evelyn with a Real Estate Purchase Agreement to Buy Lot 1 in Crestview Heights Fourth Addition, which was accepted by Evelyn that same day. During Dahl's discussions with Evelyn prior to signing the agreement, Evelyn told Dahl about the restricted use of the road easement on Outlot A to access Lot 20. She furnished Dahl a copy of the affidavit, Plaintiff's Exhibit No. 5. Dahl had no objection to a residence being built on Lot 20 if access was gained other than over Outlot A. By warranty deed dated July 30, 1986, Evelyn and John conveyed Lot 1 in Crestview Heights subdivision to Dahl.

At the time Bell bought his property from Plaintiff, he was interested in access to the lake and received that access by virtue of the written agreement. Jerome explained that the lake would be there permanently and told Bell that a roadway would not be built over Outlot A on the 52-foot road utility easement. Access to Lot 1 of Replat of Outlot "A" & Lot 10, Guenther's 1st Addition was already established from Trails End Road over the western and southern portions of Lot 2, Jerome's residence. In fact, to that time, Plaintiff could have access to Lot 20 over Lot 1 prior to Plaintiff's sale to Bell. Jerome told Bell Plaintiff could bring a road to Lot 20 through John and Evelyn's property or from property to the south.

After Dahl purchased Lot 1 Crestview Heights Fourth Addition, Plaintiff's attorney contacted Bell to determine if he would be agreeable to allowing an access road to Lot 20 across his property, because the access road could not go across the dike (Outlot A). Bell would not allow an access road to Lot 20 over his lot.

■ A. The validity of the affidavit restricting access is the critical issue in this case. The company asserts that Evelyn Guenther as secretary, acting alone, did not have authority to bind the corporation to a restrictive covenant concerning real estate owned by the corporation because both the president and secretary's signatures were needed. We note, however, that either actual or apparent authority in Evelyn is sufficient to bind the corporation. The evidence of actual authority is substantial.

Evelyn was secretary, and a fifty percent owner of the corporation. Jerome, the president, was in California. The affidavit was needed to settle litigation, the trial of which was imminent. Evelyn's affidavit was recorded which gave notice to the world, including the corporation. It had actual knowledge, and her act was not denied or repudiated for many years. The notarization of Evelyn's affidavit stated that she executed as its secretary, on behalf of the board of directors, and as the voluntary act and deed of the corporation. In fact, it was recognized by the corporation.

■ The homeowners' association relied on the affidavit in not making road repair or maintenance assessments on Outlot A and additional assessments on Lot 20. Dahl relied on the affidavit in purchasing Lot 1 in Crestview Heights Fourth Addition. The company abandoned the right to use the road when John and Evelyn sold their property. The affidavit was then of record. The company is estopped to deny the affidavit after all these years. *See Johnson v. Robertson,* 156 Iowa 64, 83, 135 N.W. 585, 593 (1912). These facts also show the apparent authority through which Evelyn acted as secretary. *See Newberry v. Barth, Inc.,* 252 N.W.2d 711, 714 (Iowa 1977).

■ B. Regarding the company's intent when the affidavit was executed, the company now claims that it only intended to restrict outsiders, not residents of Crestview Heights or Crestview Heights Fourth Addition. However, the evidence establishes that at the time of the affidavit, the company did not intend to access Lot 20 over Outlot A. On November 1, 1984, the company was seeking to avoid a road repair or maintenance assessment on Outlot A. Effectively, Evelyn's affidavit said the company would never build on Outlot A and would never drive on Outlot A. If the company could potentially drive on Outlot A itself or use it for access to Lot 20, it would need a road over Outlot A and would be liable, like other subdivision owners, for repair and maintenance and the assessment claimed due at the time of the affidavit. The company made a determination at that time where to access Lot 20. It had an opportunity for such access over John and Evelyn's property and apparently over property to the south. At the time of Evelyn's affidavit, between the company's sale to Bell and John and Evelyn's sale to Dahl, the road use was expendable; the company had other access to Lot 20. No further road repair and maintenance assessments were ever paid for Lot 20. No challenge to the restriction was made for many years. The affidavit's intent was clear; the affidavit restricted the use of Outlot A for road purposes; the company received the benefit of being relieved of payment for road and maintenance assessments on Outlot A, and after the company's initial assessment payment, from Lot 20. In construing a restrictive covenant, due regard must be had for the purposes contemplated by the parties but the words must be given their ordinary obvious meaning as commonly understood at the time the instrument was executed. *Jones v. Beiber,* 251 Iowa 969, 972, 103 N.W.2d 364, 365–66 (1960).

■ C. Nor do we find any ambiguity arising from the use of the phrase "any other property" in the language of the affidavit restricting use. The intention of the parties may be ascertained from the language of the instrument or may be implied from the surrounding circumstances. *Thodos v. Shirk,* 248 Iowa 172, 180, 79 N.W.2d 733, 738 (1956). We conclude it was the intent of the company at the time the affidavit was signed to prevent access from Crestview Heights across Outlot A to Lot 20.

■ D. The company next argues that the restriction does not apply because it owns both Lot 20 and Outlot A. It adds to this assertion that the restriction has been violated by community use and is void because it is unrestricted in time. We reject these claims, finding that the restriction is for the benefit and protection of others than the company, that occasional and sporadic use of the dam for bicycle or vehicular traffic does not cause an abandonment of the restriction, and that no time limit is required. *See Thodos,* 248 Iowa at 183–84, 79 N.W.2d at 739.

■ E. The company also argues that the character of the neighborhood has changed so that enforcement of the restriction is inequitable and causes an undue hardship. We find that although considerable development has occurred, the members of both subdivisions have enjoyed the status of Lot 20 and Outlot A, which is consistent with the initial development of the area. No change has occurred sufficient to void the restriction. Moreover, any hardship on the company is of its own creation and is not inequitable. *Grange v. Korff,* 248 Iowa 118, 130, 79 N.W.2d 743, 750 (1956). It is also apparent that its argument that the restriction results in land locking Lot 20, which the

record does not prove, is also solely of its own making. We find that public policy is not violated by the result claimed by the company under these circumstances.

We have considered all of the arguments raised by the company in this appeal and find that they are insufficient to change the decision of the district court. The trial court's denial of relief in this declaratory judgment action is affirmed.

**AFFIRMED.**